ARCO ELECTRIC COMPANY,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 78–1739.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 23, 1980.

Decided April 3, 1980.

Leonard L. Pickering, Pickering & Bingham, Albuquerque, N. M., for petitioner.

Marjorie S. Gofreed, Washington, D. C. (Arnold B. Podgorsky, Atty., N. L. R. B., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., with her on brief), for respondent.

Before McWILLIAMS, BREITENSTEIN and SEYMOUR, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Petitioner Arco Electric Company seeks review of an order of the National Labor Relations Board, 237 NLRB No. 93, which held that Arco had violated § 8(a)(1) and (5) of the National Labor Relations Act, NLRA, 29 U.S.C. § 158(a)(1) and (5), by noncompliance with a collective bargaining agreement. The Board cross-applies for enforcement of its order. We deny the review petition and enforce the Board order.

Arco is an electrical contracting firm in Roswell, New Mexico. The New Mexico Chapter of the National Electrical Contractors Association (NECA) is a multi-employer bargaining association. Arco is not, and apparently never was, a member of NECA. By the execution of periodic assents Arco, for approximately 15 years, has been bound

by contracts made by NECA with a local union of the International Brotherhood of Electrical Workers. Until 1974, the bargaining agreements were between NECA and Local 535. In May, 1973, Arco signed a "letter of assent B" presented by Local 611. The assent bound Arco to an existing agreement between Local 535 and NECA with a March, 1975, expiration date.

On May 16, 1975, Arco signed another "letter of assent B" binding it to a collective bargaining agreement between Local 611 and NECA, and any amendments thereto. The letter of assent and the underlying agreement were effective until March 31, 1976. The letter of assent provided that notice of intention not to renew should be given the Local Union in writing at least 60 days before the termination date. Arco did not notify the Union of intention not to renew the letter of assent.

On April 1, 1976, the Union and NECA made a new agreement effective through March 31, 1978. The Union did not ask Arco to sign another letter of assent. Arco complied with all the terms of this agreement until July, 1977. In June, 1977, Arco was notified of an amendment to the agreement increasing contributions to various Union funds. After discussions with Union officials Arco submitted a payroll report in September, 1977, on which was written "Final Report." The stopping of payments to various Union funds precipitated the filing of unfair labor practice charges by Local 611.

After an evidentiary hearing, the Administrative Law Judge (ALJ) announced a two-pronged decision which was approved by the Board. The decision was that (1) Arco's May 16, 1975 assent bound it to the 1976–1978 contract, and (2) Arco is bound to the 1976–1978 contract because it "engaged in a course of conduct which estops it from repudiating the collective bargaining agreement." If either holding is correct, Arco is bound.

Holding (1) is premised on the fact that Arco did not give notice of intent not to renew the assent. The weakness in this position is that Arco rejected the "A" as-

sent which continued the authorization until termination, and that assent "B" does not provide the consequences of a failure to notify. The Union could have clarified the situation by requesting a new letter of assent, but it did not.

The assent did not cover the contingency which developed. Discussion of contract law is not helpful. "[A] collective bargaining agreement is not an ordinary contract." *John Wiley & Sons v. Livingston*, 376 U.S. 543, 550, 84 S.Ct. 909, 914, 11 L.Ed.2d 898. "[I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409.

■ We must consider the conduct of the parties. In so doing it makes little difference whether that conduct be appraised as expressing the intent of the parties to an ambiguous contract or as the creation of an estoppel against repudiation. Whether particular conduct in a given case demonstrates the existence or adoption of an agreement is a question of fact. See e. g. *N. L. R. B. v. Truckdrivers etc. Union*, 6 Cir., 532 F.2d 569, 571, cert. denied 429 U.S. 859, 97 S.Ct. 160, 50 L.Ed.2d 137. The Board found that Arco's conduct estopped it from repudiation of the contract. The action of the Board must be sustained if supported by substantial evidence on the whole record. *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456.

■ Arco did not notify the Union of an intent not to renew. In addition it engaged in conduct which the ALJ described thus:

" * * * Arco Electric, during the period from April 1, 1976 to approximately July 1977 availed itself of the benefits of the union hiring hall for referral of employees; pursuant to appropriate authorizations deducted union assessments and remitted them to Local Union 611; made appropriate deductions for various funds including health and welfare trust fund, vacation plan, apprenticeship fund, and remitted the required payments to the trustees of those funds; reported the

fund payments on forms provided therefore under the contract and paid its employees working under the contract the wage scale called for or even higher pay." The actions taken as a whole convince us that Arco considered itself bound by the contract for a period of over 15 months after it became effective, and may not unilaterally repudiate its assent and the contract. See *Paint Power Inc.*, 230 N. L. R. B. 758, n. 1, and *Vin James Plastering Company*, 226 N.L.R.B. 125, 129.

■ Arco's arguments to escape the effect of its conduct do not impress us. It attacks the ALJ's holding that it stopped compliance because of financial hardship. Reasonable inferences from the testimony support the ALJ. Arco's president testified that he told a Union representative: "I can't go along with these assessments, these dues and this Union business any more and stay in business." Economic need does not justify contract repudiation. *Oak Cliff-Golman Baking Company*, 207 N.L.R.B. 1063, 1064.

■ Arco says that its contract repudiation was proper because it had good faith doubt of majority Union status. The record shows no Board certification of the Union as the bargaining representative of the Arco employees. By its assents to the bargaining contracts between the Local Union and NECA, Arco voluntarily recognized the Union. Thereby a presumption was created that a majority of the employees desired Union representation. *N. L. R. B. v. Rogers I. G. A., Inc.*, 10 Cir., 605 F.2d 1164, 1165. This is not a case of refusal to bargain because of a good faith doubt of majority status, see *N. L. R. B. v. Burns International Services, Inc.*, 10 Cir., 567 F.2d 945, 950, and *N. L. R. B. v. King Radio Corp.*, 10 Cir., 510 F.2d 1154, 1156, cert. denied 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58. Arco claims the right to repudiate because of a good faith doubt of majority status. Approval of an employer's right to terminate unilaterally a contract in mid-term would have chaotic consequences. In any event, the Board's holding that in July, 1977, the Union represented a majority has substantial record support.

Arco says that the 1977 contract amendments, which increased employers' contributions to Union funds, were invalid because Arco did not approve them. The contract permits amendments with the consent of the parties, who were NECA and the Union. Nothing in the contract requires notice of an amendment to Arco or any other employer. The question is whether Arco was bound by the contract, not whether it was entitled to notice or could disapprove an amendment. Arco's contention that continued payments to Union funds would violate NLRA § 302, 29 U.S.C. § 186, relating to financial transactions of an employer or Union is frivolous because it assumes that Arco is not bound by the 1976–1978 contract. We hold that Arco is bound.

The petition for review is denied and the award enforced.