**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 76, Plaintiff,**

v.

**CITY ELECTRIC OF OLYMPIA, a domestic corporation, Defendant.**

**No. 84–595TB.**

United States District Court,
W.D. Washington,
Tacoma Division.

July 18, 1986.

Marion G. Milosevich, Griffin & Enslow, P.S., Tacoma, Wash., for plaintiff.

Larry E. Halvorson, Davis Wright & Jones, Seattle, Wash., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER DENYING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT; and JUDGMENT OF DISMISSAL

BRYAN, District Judge.

This action is brought by the International Brotherhood of Electrical Workers, Local No. 76 to enforce a Labor Management Committee's award against the defendant City Electric of Olympia for alleged violations of a Collective Bargaining Agreement. The defendant has moved for summary judgment dismissing the plaintiff's complaint. The plaintiff has filed a cross-motion for summary judgment. After review of the records and files herein it is hereby

ORDERED the defendant's Motion for Summary Judgment Dismissing the Plaintiff's Complaint is GRANTED. It is further

ORDERED the plaintiff's Cross-Motion for Summary Judgment is DENIED.

It is further ORDERED, ADJUDGED and DECREED that this cause of action is DISMISSED with prejudice.

## UNDISPUTED FACTS

In August, 1983 LeRoy Drennon and his son, Michael Drennon, started an electrical contracting business in Olympia known as City Electric of Olympia (hereinafter referred to as "City Electric"). City Electric's business was to perform electrical wiring for residential houses. Leroy and Michael Drennon were long-time members of the International Brotherhood of Electrical Workers, Local No. 76 (hereinafter referred to as "Union"). Although the wages and benefits paid to union employees were higher than those paid to non-union employees, City Electric preferred to operate under a Union contract because the owners believed that the Union could provide them with highly qualified electricians which they could not hire "off the street." On September 2, 1983 the Drennons met with Ray Hann, Assistant Business Manager for the Union, to discuss the possibility of a "Union shop". At that meeting Leroy Drennon signed a Letter of Assent, known in the industry as a "pre-hire" agreement. A "pre-hire" agreement permits the employer to enter a collective bargaining relationship with the union prior to the union's representing a majority of the employees.

In November or early December, 1983, City Electric requested that the Union provide a residential electrician. The Union responded that they could not provide a residential electrician until after the new year. Upon further request the Union provided Curtis Walker. Curtis Walker worked for City Electric for several days. When City Electric learned that Curtis Walker did not have a valid Washington State driver's license, he was laid off. City Electric repeatedly requested a replacement electrician, but the Union failed to

provide a replacement electrician for a period of three or four weeks. Finally, the Union informed City Electric that residential wiring work was "down the tube" and City Electric was free to "hire off the street". Based on the fact that the Union was unable to supply City Electric with qualified union electricians and based on the fact that City Electric could not afford to pay union rates to less qualified electricians "off the street"; City Electric decided to terminate its Letter of Assent under the provisions of the first paragraph of the Letter of Assent which provided:

> ... This authorization, in compliance with the current approved labor agreement, shall become effective on the 2nd day of September, 1983. It shall remain in effect until terminated by the undersigned employer giving written notice to the Southwest Washington Chapter NECA and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the aforementioned approved labor agreement.

By letter dated January 31, 1984 City Electric terminated its Letter of Assent. While acknowledging receipt of the termination letter, the Union maintained that the Letter of Assent remained in full force and effect through December 31, 1984, 150 days prior to the anniversary date of the Residential Wiring Agreement (herein after referred to as "Collective Bargaining Agreement").[1]

City Electric did not use the Union hiring hall to obtain electricians after January 31, 1984. In March 1984 the Union filed a grievance against City Electric for alleged violations of the Collective Bargaining Agreement for failure to hire union electricians. On March 16, 1984 a Labor Management meeting was held to consider the grievance against City Electric. The Labor Management Committee determined that City Electric was in violation of the Collective Bargaining Agreement and awarded

compensatory damages in an amount later to be determined. The decision stated:

> Based on the above, it is the Labor-Management Committee's further decision that compensatory damages from City Electric of Olympia are awarded to Local Union # 76, IBEW members in such amount and to the extent which Local Union # 76, IBEW can document and substantiate such damages which have occurred by virtue of the above violations, subject to final approval of the Labor-Management Committee.

In September 1984 the Labor Management Committee met again. As before they found City Electric in violation of the Collective Bargaining Agreement. A final determination of the compensatory damages has not yet been determined.

On September 25, 1984 the Union filed a complaint requesting this court to enter an order enforcing the Labor-Management Committee's decision. The defendant, City Electric, has moved for summary judgment dismissing the plaintiff's complaint on two alternative bases:

1. The collective bargaining agreement under which the Labor-Management Committee issued its decision of March 20, 1984 and September 24, 1984 was effectively terminated by City Electric when it terminated the letter of assent on January 31, 1984; alternatively

2. The Union's lawsuit is premature in that the Labor-Management Committee has not yet entered a final award.

The Union has filed a response and cross-motion for summary judgment claiming that City Electric is barred from asserting affirmative defenses in this cause of action in that it did not vacate the Labor-Management Committee's award within the statute of limitations. The Union contends the Labor Management Committee's award is final and requests that it be enforced.

---

1. In its supplemental memorandum the Union further contends that while City Electric attempted to terminate its letter of assent, it did not terminate the Collective Bargaining Agreement.

## DISCUSSION

This matter comes before this court on cross-motions for summary judgment. The parties have not raised any genuine issues of material fact. Accordingly, this matter is appropriate for disposition by summary judgment. *Brinson v. Metropolitan Life Ins. Co.*, 334 F.2d 155 (4th Cir.1964).

■ The primary issue addressed to this court is the effective date and extent of the repudiation of the pre-hire agreement. If the repudiation was ineffective until December 31, 1984 there is an existing agreement to arbitrate under the Collective Bargaining Agreement and the Court should decline to resolve the underlying dispute. If the repudiation was effective January 31, 1984, and if it repudiated the Collective Bargaining Agreement there was no agreement to arbitrate. The issue of whether there is an agreement to arbitrate is an issue reserved to the courts. *John Wiley and Sons*, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed. 898 (1964). Accordingly this court has jurisdiction to decide this case.

A pre-hire agreement is a special exception to the National Labor Relations Act peculiar to the construction industry. Authorized by 29 U.S.C. 158f, Section 8(f) (1982) it permits a construction employer to enter into a collective bargaining relationship with a Union prior to the Union's representing a majority of the employees. ... An employer violates the National Labor Relations Act, 29 U.S.C. Sections 151–169 (1982) (the Act), if he enters into an agreement with a labor organization that has not won a representation election sponsored by the National Labor Relations Board or that has not been recognized pursuant to the procedures specified in the Act. *International Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). Section 9(a) of the Act, 29 U.S.C. Section 159(a) (1982), requires that the exclusive bargaining agent for an appropriate group of employees be the union that has been "designated or selected for the purposes of collective bargaining by the *majority* of

the employees." *Id.* (emphasis added); *see R. Gorman, Basic Test on Labor Law: Unionization and Collective Bargaining* 203 (1976) (hereinafter cited as R. Gorman).

Section 8(f) of the Act, 29 U.S.C. Section 158(f) (1982), however, provides a narrow exception to this general rule. That section permits an employer "engaged ... in the building and construction industry" to negotiate a labor agreement with a union, even if that union has not demonstrated "majority status." Congress added Section 8(f) to the Act in 1959, Pub.L. No. 86–257, Section 705(a), 73 Stat. 519, 545 (1959), in part because it recognized that construction industry employers typically have different jobs in different localities, complete work projects in a relatively short time, and hire a highly transient workforce organized along traditional craft lines. Because of these circumstances, Congress felt that employees in the construction industry rarely would have a sufficient stake in any one employer to petition for a certification election. *See R. Gorman, supra,* at 647. Contracts authorized by section 8(f) are usually called "pre-hire" agreements, although they need not be negotiated before a construction employer hires his workforce. A simpler definition is: A section 8(f) agreement is a labor contract negotiated between a construction employer and a "union (that) does not represent a majority (of the employees) at the time of contract execution." *Construction Erectors, Inc. v. NLRB*, 661 F.2d 801, 804 (9th Cir.1981). *Orange Belt Dist. Council of Painters v. Kashak*, 774 F.2d 985 (9th Cir.1985).

A prehire agreement does not have the same status as a collective bargaining agreement. Since a pre-hire agreement is in derogation of the employee's right to bargain collectively through representatives of their own choosing or to refrain from such activity, a pre-hire agreement has been held voidable until and unless the union attains majority support in a relevant unit. *NLRB v. Local Union No. 103, In-*

*ternational Association of Bridge, Structural & Iron Workers (Higdon),* 434 U.S. 335, 341, 98 S.Ct. 651, 655, 54 L.Ed.2d 586 (1978). It is undisputed that City Electric effectively repudiated the pre-hire agreement in its letter dated January 31, 1984. At issue is the effective date of the repudiation. Despite the fact that the notice of repudiation was given January 31, 1984, the Union contends that the repudiation was not effective until the magic date of December 31, 1984, 150 days prior to the anniversary date of the underlying collective bargaining agreement (May 31, 1985). This is a tortured construction of the termination clause and is not supported by authority.

In *Painters Dist. Counsel No. 3 Pension Fund v. Johnson,* 566 F.Supp. 592, 598 (W.D.Mo.1983) the court was presented with a similar argument. In that case the terms of the pre-hire agreement provided that the parties would be bound by the terms of the underlying collective bargaining agreement. The collective bargaining agreement provided that it would remain in effect for five years and would be automatically renewable for a three-year period at regular three-year intervals unless either party gave written notice of a desire to terminate no more than 90 days and no less than 60 days prior to any three-year anniversary date. The court found that the terms of the collective bargaining agreement which limited the employer's right to repudiate the pre-hire agreement to be against public policy and unenforceable:

> Freedom to void prehire agreements by notifying the other party of an intent to do so is an essential part of national labor policy. Plaintiffs' and the union's effort to drastically limit by contract an employer's right to repudiate prehire agreements is unenforceable. An employer's right to repudiate a prehire agreement is meaningless if an employer can be foreclosed by contract for a period of years from terminating at all as was attempted here. After the initial five year period when defendant could not terminate, he was afforded only a thirty day period every three years in which to

terminate. Similarly, technical contractual pitfalls for the unwary such as requiring notice to third parties as a condition to effective termination cannot be allowed to thwart an employer's reasonable efforts to terminate a prehire agreement. . . .

*Painters Dist. Counsel No. 3 Pension Fund v. Johnson, supra,* at 598.

The Ninth Circuit is in accord. *See Operating Engineers Pen. Trust v. Beck Engineering and Surveying,* 746 F.2d 557 (9th Cir.1984). The effective date of the repudiation of the prehire agreement between City Electric and the Union was February 1, 1984, the date the Union received City Electric's notice of termination.

The authority provided by the Union in its supplemental response in support of its interpretation of the termination provision is not applicable in this case. In *Electrical Workers Local 257 v. Grimm,* 121 LRRM 3045 (U.S.Ct.App. 8th Cir.1986), *Local 2, International Brotherhood of Electrical Workers v. Gerstner Electric, Inc.,* 614 F.Supp. 874, 121 LRRM 3042 (E.D.Mo.1985) and *ARCO Electric Company v. NLRB,* 618 F.2d 698, 103 LRRM 3114 (10th Cir. 1980) cited by the Union, the Union had obtained majority status at the time an attempt was made to repudiate a prehire agreement. The labor relationship was no longer merely a prehire agreement, but had matured into a binding Collective Bargaining Agreement. The employer was held to be bound by the specific termination provision of the Collective Bargaining Agreement. In this case the Union had not obtained majority status at the time City Electric sent its termination notice. The prehire agreement had not matured into a binding Collective Bargaining Agreement.

In *Nelson Electric v. NLRB,* 638 F.2d 965, 106 LRRM 2393 (6th Cir.1981) also cited by the Union, the employer acted under a prehire agreement for a period of two years. During that time the Union continually referred employees to the employer. The court found the employer bound to the terms of the Collective Bargaining Agreement by its conduct. It

could not repudiate a new Collective Bargaining Agreement after the original agreement had expired. In this case, the Union referred only one employee to City Electric during the time the letter of assent was in effect. City Electric did not seek any further referrals from the Union hall after notice of termination. City Electric did not bind itself, by its conduct, to the Collective Bargaining Agreement.

 The Union contends that since City Electric failed to vacate the determination of the Labor Management Committee, it is barred from asserting the affirmative defense discussed above. In support of its position the Union cites *Fortune, Alsweet & Elridge, Inc. v. Daniel*, 724 F.2d 1355 (9th Cir.1983) and *SMWIA Local 252 v. Standard Sheetmetal*, 699 F.2d 481 (9th Cir.1982) for the proposition that once a party has submitted to arbitration, the party is bound by the arbitrator's award and the party is precluded from raising defenses that it could have raised during the arbitration process unless the party moves to vacate the award within the statutory period. However, in both of those cases the court further ruled that a party is not barred from raising defenses to an arbitration award where the defense is whether there was an agreement to arbitrate in the first instance. City Electric has taken the position that it voided the arbitration agreement when it repudiated the prehire agreement. As discussed above, repudiation of a prehire agreement involves the pivotal issue of whether there is an agreement to arbitrate. *J.S. Griffith Const. v. United Bro. of Carpenters*, 785 F.2d 706 (9th Cir. 1986). The defense at issue is whether there was an agreement to arbitrate. City Electric is not now barred from raising that defense.

 The Union's assertion that City Electric was required to terminate the Collective Bargaining Agreement as well as the Letter of Assent is without merit. The termination letter voided the arbitration agreement as well as the prehire agreement. The Letter of Assent, which constitutes the agreement between the parties, does not require separate termination of the Collective Bargaining Agreement. Moreover, such an argument necessarily suggests that a prehire agreement creates a binding Collective Bargaining Agreement prior to the Union's achieving majority status. That presumption is contrary to the National Labor Relations Act discussed above.