818 F.2d 1102
 106 Lab.Cas. P 12,362
 Hugh B. CLARK, Trustee; Jack L. Thomas, Trustee; Roanoke
Iron Workers Trust Fund; Roanoke Iron Workers
Pension Fund; and Roanoke Iron Workers
Apprentice Fund, Appellants,
v.
A.A. RYAN, Jr., Appellee.
 No. 85-2395.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 11, 1986.
Decided May 15, 1987.
 
 Lawrence C. Musgrove, Jr., Roanoke, Va., on brief, for appellants.
 James H. Fulghum, Jr. (King, Fulghum, Snead & Hale, P.C., on brief), Roanoke, Va., for appellee.
 Before ERVIN, WILKINSON and WILKINS, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 Appellants Clark and Thomas, trustees of three trust funds established by Local 697, International Association of Bridge, Structural and Ornamental Ironworkers, brought suit against A.A. Ryan to recover $22,534.29 in unpaid trust fund contributions on behalf of his non-union workers. The trial court held that Ryan was obliged to make payments for his union workers only. We believe that the district court overlooked the plain terms of the collective bargaining agreement. We accordingly reverse the judgment and remand for further proceedings in accordance with this opinion.
 
 I.
 
 2
 Local 697 and the Southwest Virginia Contractors Association, an association of local contractors who regularly hire workers represented by the union, are parties to a collective bargaining agreement. The agreement designates Local 697 as the exclusive bargaining representative for "all persons employed" by the contractors who fall within the craft classifications specified in Article I of the agreement. The agreement requires employers to make contributions to three trust funds which are administered by the Local. The agreement also contains a termination provision which states:
 
 
 3
 This agreement shall be in force from June 1, 1980, through May 31, 1982, and shall be automatically renewed from year to year unless on or before March 1, 1982, notice of an intent to terminate it be given by certified mail by either party to the other party.
 
 
 4
 Appellee Ryan regularly employs four workers in his small iron fabricating business. From time to time, he supplements his non-union work force by contracting with Local 697 for union labor. Ryan was not a member of the contractors' association. On February 6, 1980, however, he became a party to the agreement between Local 697 and the contractors' association by signing a one-page short form agreement which incorporates the master agreement by reference.
 
 
 5
 The short form agreement states that "the Employer agrees to make payments to the stated Plans covering all of its employees in the craft classification represented by and within the jurisdiction of Local Union 697." Article III, Section I of the master agreement requires employers to pay into the health and welfare trust fund for each hour "worked by employees represented by Local 697." Article III, Section 2, pertaining to pension contributions and Article VIII referring to apprenticeship contributions, require payments from employers for each hour worked "by an employee in the craft classification represented by Local No. 697." Ryan made contributions to the three funds from August, 1980, through October, 1982, on behalf of his union employees, but he did not contribute for his non-union employees.
 
 
 6
 Appellants brought suit, claiming that Ryan owed a total of $22,534.29 in contributions on behalf of his non-union workers for the period of August, 1980 through August, 1983, at which time appellants filed their complaint. At the district court, Ryan contended that appellants orally assured him when he signed the one-page agreement that he was obligated to contribute only for those of his employees who were union members. Ryan also asserted that he terminated the agreement sometime during the summer of 1982 by orally notifying appellant Clark of his withdrawal.
 
 
 7
 The district court found that the agreement was ambiguous as to whether Ryan was required to make trust fund contributions for his non-union employees; it thereupon took testimony on the parties' intentions. The court found credible Ryan's testimony that he believed himself obligated to make contributions only on behalf of his union employees. The district court also found that Ryan withdrew from the agreement by notifying appellee Clark in July, 1982, and was not responsible for payments accruing after that time. Pursuant to these findings, the district court entered a judgment against Ryan for $2,449.05.
 
 II.
 
 8
 Appellants claim that the provisions of the collective bargaining agreement governing trust fund contributions are not ambiguous and that the district court should not have admitted extrinsic evidence to interpret them. We agree with appellants that these provisions plainly require employers to contribute to the three funds on behalf of all their employees, both union and non-union.
 
 
 9
 The language of the relevant agreements repeatedly refers to the type of work performed, not to the status of union membership. The short form agreement provides that "the Employer agrees to make payments to the stated Plans covering all of its employees in the craft classification represented by and within the jurisdiction of Local Union No. 697." Similarly, the provisions of the master agreement relating to the pension and apprenticeship funds cover "employee[s] in the craft classification represented by Local 697." The craft classifications represented by and within Local 697's jurisdiction are listed in Article I of the agreement. The provisions require payments for all of Ryan's employees, both union members and non-members, who perform the work described in Article I.
 
 
 10
 Ryan argues that the agreement's health and welfare fund provision which requires contributions from "employees represented by Local 697" can be read to require payments only for union members. According to Ryan, the discrepancy between the wording of the health and welfare provision and the other trust fund provisions creates an ambiguity. We disagree. The agreement's preamble designates the union as the exclusive bargaining representative for "all persons employed by [the contractors] in the craft classification set forth in Article I." "All persons" and "all employees" do not mean "some". This provision makes it clear that when the health and welfare provision refers to "employees represented by Local 697," it means all of Ryan's employees, both union members and non-members, who perform a particular type of work.
 
 
 11
 Other provisions of the agreement provide further support for this interpretation. For example, in Article I, section 3-A, the parties agreed that, for employer convenience, employers' fringe benefits reports may also serve as health and welfare fund reports "on the hours worked by all employees." In addition, the parties specifically refer to union "members" in other provisions of the agreement, such as the dues check off provision, where the distinction between union membership and union representation is relevant.
 
 
 12
 The facts of this case resemble those of Manning v. Wiscombe, 498 F.2d 1311 (10th Cir.1974). There, as here, a non-member of a contractors' association signed a collective bargaining agreement which established the union as the "exclusive bargaining representative" for all craft employees in the employ of the contractor. The district court agreed with the employer that no contributions were required under the agreement on behalf of non-union employees. The court of appeals reversed, holding that the recognition clause of the contract established an obligation to make trust fund payments for union and non-union employees alike, despite the fact that the employer had from the inception of the contract made contributions only on behalf of employees who were union members. Here, if anything, the language is even more emphatic because the short form specifically requires trust fund payments for all employees within the craft classification represented by the union. See also Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 319 (6th Cir.1984); Washington Area Carpenters' v. Overhead Door, 681 F.2d 1, 10 (D.C.Cir.1982); Audit Services, Inc. v. Rolfson, 641 F.2d 757, 761 (9th Cir.1981); Carpenters and Millwrights Health Benefit Trust Fund v. Gardineer Dry Walling Co., 573 F.2d 1172, 1177 (10th Cir.1978); Painters Dist. Council No. 3 Pension Fund v. Johnson, 566 F.Supp. 592, 598-99 (W.D.Mo.1983); Markt v. Ro-Mart, Inc., 471 F.Supp. 1292, 1296-97 (N.D.Cal.1979).
 
 
 13
 Because the disputed language is neither ambiguous nor uncertain, the district court's decision to admit parol evidence was error. See Laborers Health & Welfare Trust Fund for Northern California v. Kaufman & Broad, 707 F.2d 412, 418 (9th Cir.1983); Markt, 471 F.Supp. at 1297. Courts are especially wary of admitting parol evidence with respect to trust fund agreements. In Kemmis v. McGoldrick, 706 F.2d 993, 996-97 (9th Cir.1983), the Ninth Circuit noted that
 
 
 14
 Oral agreements between union representatives and employers regarding the meaning of a written trust fund agreement are difficult to prove. Judicial recognition of such oral statements invites collusion and controversy to the detriment of the employee beneficiaries.
 
 
 15
 Id. at 996. See also Operating Engineers Pension Trust v. Beck, 746 F.2d 557, 568 (9th Cir.1984). In accordance with the plain meaning of the trust fund provisions of the agreement, we reverse the district court's holding that Ryan had no obligation to make trust fund contributions for his non-union employees. Contributions to trust funds "are as much a part of an employee's compensation as his hourly wages, and an employer should not be free to withhold either one." Overhead Door, 681 F.2d at 9.
 
 III.
 
 16
 Appellants' second contention is that the district court erred in determining that appellee Ryan unilaterally terminated his participation in the agreement in July, 1982, by orally notifying appellant Clark. Although Ryan's notification did not comply with the termination provision of the agreement, it may be an effective repudiation if the agreement is a pre-hire agreement under section 8(f) of the Labor Management Relations Act, 29 U.S.C. Sec. 158(f).* We remand for a determination of whether a pre-hire agreement existed here and whether Ryan properly repudiated it.
 
 
 17
 The one-page short form agreement signed by Ryan specifically adopts all the terms and provisions of the agreement, including "any modifications, extensions or renewals thereof, with the same force and effect" as if the agreement were "set forth here in full." The agreement's termination provision provides that the agreement shall be automatically renewed from year to year unless notice of intent to terminate is sent by certified mail before March 1, 1982.
 
 
 18
 Where a contractual termination provision is clear and unambiguous, the parties must normally abide by it. Irwin v. Carpenters Health & Welfare Trust Fund, 745 F.2d 553, 556-57 (9th Cir.1984). The record indicates that appellee Ryan did not give the prescribed notice in attempting to terminate his obligations under the agreement, nor is there any finding that the parties altered the termination provision by mutual consent.
 
 
 19
 The district court found, however, that "the agreement was terminated in July of 1982, at which time [Ryan] testified that he informed [Clark] that he was withdrawing from the contract." This withdrawal may constitute a valid repudiation if the agreement in this case is a pre-hire agreement under section 8(f).
 
 
 20
 Section 8(f) allows an employer engaged in construction work to enter a collective bargaining agreement with a union that does not represent a majority of employees. Congress enacted section 8(f) in recognition of the temporary and seasonal nature of construction employment and of the difficulty of attaining majority support under those circumstances. Jim McNeff, Inc. v. Todd, 461 U.S. 260, 266, 103 S.Ct. 1753, 1756, 75 L.Ed.2d 830 (1983). The section permits employees to obtain the benefits of collective bargaining "where it might otherwise be impractical." Overhead Door, 681 F.2d at 8. In addition, the section fulfills the construction industry employer's need to " 'know his labor costs before making an estimate upon which his bid will be based and to have available a supply of skilled craftsmen for quick referral.' " McNeff, 461 U.S. at 266, 103 S.Ct. at 1757 (quoting H.R.Rep. No. 741, 86th Cong. 1st Sess. 55-56, 1 Leg.Hist. 777). Congress was also cognizant, however, of the employees' right to select bargaining representatives of their own choosing, NLRB v. Iron Workers, 434 U.S. 335, 341, 98 S.Ct. 651, 655, 54 L.Ed.2d 586 (1978). Therefore, a pre-hire agreement may be repudiated at any time by either party prior to the union's achievement of majority status, McNeff, 461 U.S. at 271, 103 S.Ct. at 1759. The right to repudiate supersedes an agreement's termination provision, Beck, 746 F.2d at 566-67; International Brotherhood v. City Electric of Olympia, 639 F.Supp. 1363, 1367 (W.D.Wash.1986). Were it otherwise, the rationale for the terminability of pre-hire agreements would be rendered meaningless.
 
 
 21
 Under section 8(f), a pre-hire agreement exists if 1) it covers employees who are engaged in the building and construction industry; 2) the agreement is with a labor organization of which building and construction employees are members; and 3) the agreement is with an employer engaged primarily in the building and construction industry. Beck, 746 F.2d at 566. For purposes of section 8(f), an employer's involvement in the building and construction industry must be more than insubstantial. Beck, 746 F.2d at 563 and n. 3. The standard, however, does not include those employers who merely manufacture and assemble products for installation by others at construction sites. See NLRB v. W.L. Rives Co., 328 F.2d 464, 469 (5th Cir.1964); A.L. Adams Construction Co. v. Georgia Power, 733 F.2d 853, 858 n. 12 (11th Cir.1984).
 
 
 22
 We are unable to determine from this record whether or not Ryan is an employer within the meaning of section 8(f). In the event that a pre-hire agreement existed here, Ryan would still have been bound by its terms, McNeff, 461 U.S. at 271-72, 103 S.Ct. at 1759, but he would also have been able to repudiate the agreement by providing notice to the union. See Overhead Door, 681 F.2d at 9 and n. 38. Section 8(f) imparts a flexibility to collective bargaining agreements; its purposes are best served by requiring simply that notice to repudiate be sufficient under the circumstances. We thus remand for further findings on this issue and for a determination of when Ryan's obligations under the agreement came to an end.
 
 IV.
 
 23
 In reversing the district court, we make no determination as to the amount of Ryan's unpaid contributions. On remand, we instruct only that the obligation imposed must find its basis in the governing agreement. We reverse the judgment of the district court and remand for further proceedings in accordance with this opinion.
 
 
 24
 REVERSED AND REMANDED.
 
 
 25
 WILKINS, Circuit Judge, concurring in part and dissenting in part:
 
 
 26
 I concur in the majority's holding that Defendant did not comply with the termination provision in the Agreement. I also concur in the remand for consideration of whether the Agreement was a voidable pre-hire agreement and whether Defendant effectively repudiated it. However, I respectfully dissent from the holding that the Agreement unambiguously requires Defendant to make trust fund contributions on behalf of union and non-union employees.
 
 
 27
 The one-page Acceptance of Agreement signed by Defendant provides that: "Employer agrees to make payments ... covering all of its employees in the craft classification represented by ... Local No. 697...." The incorporated Agreement requires health and welfare trust fund contributions for hours worked "by employees represented by Local No. 697" and contributions to the pension and apprenticeship trust funds for hours worked "by an employee in the craft classification represented by Local No. 697."The phrase "employees represented by Local No. 697" can fairly be read as meaning employees who are union members. Whereas, the phrase "employee in the craft classification represented by Local No. 697" can be read as meaning union and non-union members. The Agreement is unclear and ambiguous as to the employees for which Defendant was required to make trust fund contributions.
 
 
 28
 The parol evidence adduced at trial, without objection from Plaintiff Trustees, amply supports the district court's finding that the parties intended the Agreement to require Defendant to make contributions only on behalf of union member employees. Defendant testified that he understood the Agreement to apply only to union members and he was told by Plaintiff Trustee Clark that he would only have to make contributions on behalf of the union members. He further testified that he was never asked to make any contributions for non-union men. Robert Giles, a member of the executive board of the Local No. 697 at the time Defendant entered the Agreement, testified that Clark told the Board that Defendant would be contributing only for union members. Plaintiff Trustee Thomas testified that it was his understanding that Defendant would be contributing only for union members and he informed Defendant that the Agreement only pertained to union members.
 
 
 29
 I would affirm the district court's decision that the Agreement only required Defendant to make trust fund contributions for hours worked by union member employees.
 
 
 
 *
 Section 8(f) provides in pertinent part:
 It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in subsection (a) of this section as an unfair labor practice) because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such an agreement.... Provided, That nothing in this subsection shall set aside the final proviso to subsection (a)(3) of this section: Provided further, That any agreement which would be invalid, but for clause (1) of the subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title. (emphasis in original).
 29 U.S.C. Sec. 158(f).