**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, Local Union
No. 26,

No. 96-1377

Intervenor,

v.

D. L. BAKER, t/a Baker Electric,
Respondent.

D. L. BAKER, t/a Baker Electric,
Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

No. 96-1548

Respondent,

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, Local Union
No. 26,
Intervenor.

On Petition for Review and Cross Application
for Enforcement of an Order of the
National Labor Relations Board.
(5-CA-24131, 5-CA-24190)

Argued: December 6, 1996

Decided: January 8, 1997

Before WILKINS, HAMILTON, and WILLIAMS, Circuit Judges.

Application for enforcement granted and petition for review denied by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** J. Raymond Sparrow, Jr., SHUMATE, KRAFTSON & SPARROW, P.C., Reston, Virginia, for Baker. Julie Brock Broido, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for NLRB. Brian A. Powers, O'DONOGHUE & O'DONOGHUE, Washington, D.C., for Intervenor. **ON BRIEF:** Michael E. Avakian, THE CENTER ON NATIONAL LABOR POLICY, INC., North Springfield, Virginia, for Baker. Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Margaret Gaines Neigus, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for NLRB. John M. McIntire, O'DONOGHUE & O'DONOGHUE, Washington, D.C., for Intervenor.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The National Labor Relations Board (the Board) filed a complaint against D. L. Baker, Inc. (the Company) on February 7, 1994, alleging that the Company violated § 8(a)(1) and (a)(3) of the National Labor Relations Act (the Act), see 29 U.S.C.A. § 158(a)(1), (a)(3) (West 1973), by firing an employee for pro-union activity, and that the Company violated § 8(a)(1) of the Act by coercively interrogating employees about union activity, see 29 U.S.C.A. § 158(a)(1). Later, the Board filed a second complaint, alleging that the Company violated § 8(a)(1) and (a)(5) of the Act, see 29 U.S.C.A. § 158(a)(1), (a)(5) (West 1973), by refusing to comply with a§ 8(f) prehire agree-

2

ment, see 29 U.S.C.A. § 158(f) (West 1973). On May 19, 1994, the complaints were consolidated. The case was heard by an administrative law judge (ALJ) on October 3 and 4, 1994.

The ALJ concluded that the Company had violated the Act by (1) firing Michael Tangy for his pro-union activity; (2) coercively questioning other employees about their union activities; and (3) refusing to adhere to the current collective bargaining agreement between Local Union No. 26, International Brotherhood of Electrical Workers (the Union), and the Washington, D.C., Chapter of the National Electrical Contractors Association (NECA). After considering exceptions filed by the Company, the Board adopted the ALJ's factual findings, legal conclusions, and proposed order.[1] Thereafter, the Company filed a petition for review, and the Board filed a cross-petition for enforcement of the order.

The ALJ's findings of fact are adequate to address most of the Company's arguments. Therefore, we will reiterate the facts only when specifically relevant. And although we review de novo the ALJ's legal conclusions, if accepted by the Board,"we must sustain the [ALJ's] factual findings `if supported by substantial evidence on the record considered as a whole.'" Virginia Concrete Co. v. NLRB, 75 F.3d 974, 980 (4th Cir. 1996) (quoting 29 U.S.C.A. § 160(e) (West 1973)). Moreover, "absent exceptional circumstances, the ALJ's credibility findings, `when adopted by the Board are to be accepted by the [reviewing] court.'" NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983) (alteration in original) (quoting Dubin-Haskell Lining Corp. v. NLRB, 375 F.2d 568, 571 (4th Cir. 1967)).

In its petition, the Company argues first that there was insufficient evidence to support the Board's conclusion that Michael Tangy was fired for pro-union activity. The Company lodges a similar evidentiary argument against the Board's conclusion that other employees were coercively interrogated about their union activities. Finally, the Company challenges the holding that it violated§ 8(a)(1) and (a)(5) by not adhering to the current § 8(f) agreement between the Union

_____

[1] The Board did modify the ALJ's proposed remedy for the Company's violation of § 8(a)(1) and (a)(5). That issue is not before us, however, and we need not address it.

and NECA. Finding no merit to the Company's arguments, which we consider in turn, we deny the Company's petition for review and enforce the Board's order.

I.

An employer violates § 8(a)(1) and (a)(3) of the Act by firing an employee because of the employee's pro-union activities. See FPC Holdings, Inc. v. NLRB, 64 F.3d 935, 942 (4th Cir. 1995); NLRB v. Hale Container Line, Inc., 943 F.2d 394, 398 (4th Cir. 1991). Here, the ALJ concluded, and the Board agreed, that "[b]y discriminatorily discharging Michael Tangy on December 1, 1993, for supporting the Union, the Company has engaged in unfair labor practices" under § 8(a)(1) and (a)(3). (J.A. at 621.)

Applying our deferential standard of review, we uphold the ALJ's findings of fact, which are clearly supported by substantial evidence in the record. The ALJ specifically found that Tangy's testimony was "truthful" (J.A. at 612), and that Tangy's witness, Graham, "impressed [the ALJ] favorably as being [a] truthful witness[ ], trying to recall accurately what had happened" (J.A. at 612). On the other hand, the ALJ found that Daniel Baker, one of the principal witnesses for the Company, "clearly gave fabricated testimony" (J.A. at 612), and that "the Company fabricated the defense that it had already decided to discharge Tangy" because of his poor performance (J.A. at 613). In short, the ALJ observed the witnesses at length and made specific credibility determinations, and the Board "carefully examined the record and [found] no basis for reversing the[ALJ's] findings." (J.A. at 609 n.1.) Because we must accord substantial deference to the ALJ's credibility determinations and factual findings, as adopted by the Board, we accept the conclusion that the Company fired Tangy because of his pro-union activities and therefore violated § 8(a)(1) and (a)(3).

II.

An employer also violates § 8(a)(1) by coercively interrogating employees about their pro-union activities. See Equitable Gas Co. v. NLRB, 966 F.2d 861, 866-67 (4th Cir. 1992); NLRB v. Nueva Eng., Inc., 761 F.2d 961, 966 (4th Cir. 1985). Mindful of our deferential

4

standard of review, we note that "[t]he coercive effect of an employer's speech in a particular labor relations setting,`is a question essentially for the specialized experience of the NLRB,'" J. P. Stevens & Co. v. NLRB, 638 F.2d 676, 687 (4th Cir. 1980) (quoting Daniel Constr. Co. v. NLRB, 341 F.2d 805, 811 (4th Cir. 1965)). The ALJ found that the Company "coercively interrogat[ed] employees and inform-[ed] employees that it discharged Tangy because of his union-related activity . . . ." (J.A. at 621.) The Company does not deny that it questioned employees about their union activity, but argues only that the questioning was not coercive. The Company's lengthy argument, however, does not change the fact that the ALJ heard the witnesses, weighed the evidence, made credibility determinations, and concluded that these statements were coercive. As noted above, the ALJ's factual determination is entitled to deference on appeal. We therefore find substantial evidence in the record to support the ALJ's conclusion, adopted by the Board, that the Company coercively interrogated its employees about their union activity, thereby violating § 8(a)(1) of the Act.

III.

Finally, the Company challenges the Board's holding that it violated § 8(a)(1) and (a)(5) by failing to adhere to the current § 8(f) agreement between NECA and the Union. Section 8(f) allows employers or multiemployer associations in the construction industry to enter into collective bargaining agreements, commonly called "pre-hire agreements," with unions that have not formally established majority status. See 29 U.S.C.A. § 158(f). Moreover, an individual construction employer can voluntarily enter a "me-too" agreement, in which the individual employer authorizes a multiemployer bargaining association to represent it in § 8(f) negotiations. In such an arrangement, the individual employer agrees to be bound to the § 8(f) agreement reached between the multiemployer bargaining association and the union. Here, the ALJ concluded, and the Board agreed, that the Company had violated the current § 8(f) agreement between NECA and the Union, to which it was bound by virtue of two "me-too" documents the Company signed in 1976.[2] Although the Company chal-

_____

[2] The two "me-too" documents were the "Letter of Assent-A" (J.A. at 402) and the "Benefit Fund Agreement" (J.A. at 403).

5

lenges this conclusion on several grounds, we reject each of the Company's arguments.

The Company first argues that it repudiated the 1976 "me-too" documents by sixteen years of "notorious" nonunion operations. We disagree.[3] In Jim McNeff, Inc. v. Todd, 461 U.S. 260, 270 n.11 (1983), the Supreme Court recognized that certain "specific acts would affect the repudiation of a prehire agreement." See also Clark v. Ryan, 818 F.2d 1102, 1107 (4th Cir. 1987) (recognizing that, until an § 8(f) agreement is repudiated, it must be followed). Under McNeff and Clark, however, acts sufficient to repudiate the prehire agreement require at least that the Union have some form of notice of the inconsistent conduct. Here, the ALJ specifically found that the Company "succeeded in operating nonunion without discovery by the Union until September 1993" (J.A. at 621), and that "[t]here was no reason for [the Union] to suspect that Baker was reneging on his promises and operating nonunion" (J.A. at 620). These factual findings are supported by substantial evidence and are not contradicted by any evidence offered by the Company. Therefore, we must reject the Company's argument that its conduct prior to September 1993 was sufficiently "notorious" to repudiate the contract.

The Company also argues that it is not bound to the current § 8(f) agreement between NECA and the Union because, in 1976, it agreed only to be bound to the "current approved labor agreement." Because the § 8(f) agreement existing in 1976 has been replaced by a series of four successor agreements, culminating in the current § 8(f) agreement, the Company argues that its consent in the "me-too" documents it signed in 1976 does not bind it to the current § 8(f) agreement.

The ALJ found, however, that the Company was bound to the current § 8(f) agreement by virtue of renewal clauses contained in both

_____

**3** The ALJ apparently assumed that John Deklewa & Sons, Inc., 282 N.L.R.B. Dec. 1375 (1987), enforced sub nom. International Ass'n of Bridge, Structural & Ornamental Iron Workers v. NLRB , 843 F.2d 770 (3d Cir. 1988), controlled the issue. (J.A. at 616, 621.) Because the Fourth Circuit has not adopted Deklewa, we analyze the Company's argument under Clark v. Ryan, 818 F.2d 1102 (4th Cir. 1987). The result, however, does not change under the rationale of either decision.

6

"me-too" documents,**4** as well as in each § 8(f) agreement. Although we normally afford the ALJ and the Board considerable deference, we owe no deference to the interpretation of contractual provisions, which we review de novo. See Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 203 (1991) ("We would risk the development of conflicting principles were we to defer to the Board in its interpretation of the contract . . . ."). We agree, however, with the Board's conclusion that the Company is bound to the current § 8(f) agreement. Other courts have reached the same result. See Local 257, Int'l Bhd. of Elec. Workers v. Grimm, 786 F.2d 342, 345-46 (8th Cir. 1986) (binding an employer to successor § 8(f) agreements by virtue of "me-too" documents identical to those in the instant case); NLRB v. Black, 709 F.2d 939, 940-41 (5th Cir. 1983) (per curiam) (holding that a "me-too" document signed in 1978 bound the employer to a§ 8(f) agreement effective from 1979-81); Nelson Elec. v. NLRB , 638 F.2d 965, 967-68 (6th Cir. 1981) (per curiam) (finding that an employer was bound to a "new collective bargaining agreement" that became effective after the employer signed a "me-too" document identical to the one at issue here). We therefore agree with the ALJ and the Board that the Company's delegation of bargaining authority to NECA continued until revoked, and that prior to this action the Company did not revoke NECA's authority. Accordingly, we accept the Board's conclusion that the Company was bound to the current § 8(f) agreement between NECA and the Union.**5**

_____

**4** Specifically, the Letter of Assent-A authorized NECA to act as the Company's "collective bargaining representative for all matters contained in or pertaining to the" § 8(f) agreement between NECA and the Union. (J.A. at 402.) This authorization was to"remain in effect until terminated by [the Company] giving written notice. . . ." (J.A. at 402.) The Benefit Fund Agreement contained similar language. (J.A. at 403.)

**5** The Company also argues that because Holly Baker, Baker's ex-wife, signed the 1976 "me-too" documents in the name of Baker's sole proprietorship, the Company itself is not bound to the current § 8(f) agreement. Holly Baker signed the "me-too" documents, however, as "President" of the employer, and the Company never explains how she could have been the president of a sole proprietorship. Moreover, the Company has never demonstrated that Daniel Baker was, in fact, operating two separate legal entities. We therefore reject this argument on the Board's reasoning. (J.A. at 609.)

IV.

In conclusion, we agree with the Board's holding that the Company violated § 8(a)(1) and (a)(3) by firing Tangy for his pro-union activities, and that the Company violated § 8(a)(1) by coercively interrogating employees. Moreover, we accept the Board's holding that the Company violated § 8(a)(1) and (a)(5) by refusing to adhere to the current § 8(f) agreement between the Union and NECA. Because the Company never effectively repudiated the § 8(f) agreement, it may be held liable for breaching its terms. We therefore deny the Company's petition for review and grant the Board's cross-petition for enforcement.

PETITION FOR ENFORCEMENT GRANTED;
PETITION FOR REVIEW DENIED

8