Douglas **TOLER**, Appellant,

v.

**T.RAVIS COUNTY CHILD WELFARE UNIT**, Appellee.

No. 12206.

Court of Civil Appeals of Texas, Austin.

March 12, 1975.

Rehearing Denied April 2, 1975.

Earl L. Yeakel, III, Kammerman, Yeakel & Hineman, Austin, for appellant.

Brock Jones, Jr., Staff Atty., Travis County Juvenile Court, Austin, for appellee.

O'QUINN, Justice.

Douglas Toler, appellant, has appealed from judgment of the juvenile court of Travis County, under which appellant's son, a minor, was adjudged a dependent and neglected child. The judgment terminated appellant's rights as a parent, made the child a ward of the district court, and placed the boy in custody of the county welfare unit for purpose of permanent planning, including adoptive placement.

Appellant contends that because he was not served with citation and did not have adequate notice of the nature of the trial, he was unable to prepare adequately and properly a defense to the petition filed in behalf of the child welfare unit. Appellant's position is that his parental rights were extinguished without regard to due process of law.

The county welfare unit, appellee, does not contest appellant's contention that an attempt to serve appellant by publication failed, and that service under Rule 108, Texas Rules of Civil Procedure, was not undertaken, although appellee knew that appellant resided in West Virginia and was aware of appellant's correct address in that state.

The parties join issue on whether appellant, who learned of the trial in advance

and attended the hearing, made his general appearance in the cause, thereby waiving the right to contest adequacy of notice to him.

The action in which the trial court's judgment was entered began with application filed on February 16, 1973, by the Travis County Child Welfare Unit to have appellant's son and two children of appellant's wife by a prior marriage adjudged dependent and neglected children. Toler and his wife separated late in 1972, and he went to West Virginia to work, leaving her with the children in Austin. Shortly before this action was initiated by the child welfare unit Toler's wife left the three children with her first husband, from whom she was divorced, and temporarily disappeared. The former husband, father of two of the three children, requested foster care placement for all the children because he was unable to provide care and supervision.

The hearing in district court from which this appeal emanates was held December 20, 1973. In the period extending from a short time after filing of the application in February of 1973 to the hearing in December of 1973, covering approximately ten months, Toler was in communication from time to time with the child welfare unit and was advised at intervals of interim orders made by the court. Immediately after the application had been filed, Toler drove by automobile from West Virginia to Austin and offered to take his son and his wife's two children back to West Virginia so that his mother could care for the children. After an investigation, requested by the Travis County Child Welfare Unit, the West Virginia State Welfare Department failed to approve a plan to place the children with Toler's mother in West Virginia. The three children, including Toler's son, between the filing of the application and the trial in December of 1973, were cared for in foster homes.

Toler and his wife were in communication with each other in November by telephone, prior to the hearing on December 20, 1973. Mrs. Toler testified that they planned to resume living together in West Virginia if permitted to resume custody of the children and take them to West Virginia. The record discloses that the child welfare unit advised Toler by letter in November that the hearing had been set for December 20.

Toler arrived in Austin about four days prior to the hearing in December, and during that period he conferred with Mrs. Toler and with the attorney who represented Mrs. Toler later at the trial. The record shows that present in court when the hearing began on December 20 were Toler and his wife, the director of the child welfare unit, the attorney ad litem appointed by the court to represent the children, Mrs. Toler's attorney, and her first husband, father of two of the children.

Counsel for Mrs. Toler, at the outset, orally moved for continuance, or postponement of the proceeding, to permit Toler and his wife to submit a "plan or solution" to the court. In addition, counsel stated, "And on behalf of Mr. Toler, he has not been duly served . . . [although] he had been corresponding . . ." with the child welfare unit. "In fact, he [Toler] flew down here and talked with the child welfare unit and at no time was he ever served." Counsel stated to the court that he was not employed by Toler and was "just representing Mrs. Toler."

When questioned by the court, Toler stated that he was "not completely" familiar with the petition, but did know that his child had been in custody of the child welfare unit and he had been in touch with the welfare unit "from time to time." Toler stated that he had known since March of 1973 that the case had been in court. Toler told the court he had not employed an attorney but was able to engage counsel. When asked if he knew "what the case is about," Toler replied, "Yes, sir." In the course of the hearing the court suspended the proceedings to permit Toler to

read all of the petition. The court asked Toler if he found anything in the petition that was a surprise or if he knew "what had been going on." Toler replied, "No, sir, I believe everything that is in here [the petition] I have . . ."

The court ordered the cause to proceed and advised Toler that the court considered him "as appearing in this case at this time at least and will give you every opportunity to cross-examine any witnesses . . ." During the hearing Toler was called as a witness, and after testifying that in the months preceding the trial the "welfare people knew where" he was at all times, Toler gave the following testimony under examination by Mrs. Toler's counsel:

"Q.  And do you feel that you have received adequate notice as to what the welfare people are trying to prove or allege in this case?

"A.  Yes, sir, I would say I have.

"Q.  That is through the mail that you received through the [case] worker?

"A.  Yes, sir, nothing official.

"Q.  But as far as the legality or the summons you could take to an attorney, have you ever received any papers, have they even told you the style of the case, or the cause number, or anything about it?

"A.  No, sir."

Appellee acknowledges that provisions of Article 2332, Vernon's Anno.Civ.Sts., (repealed effective January 1, 1974, Acts 1973, 63rd Leg., p. 1458, ch. 543, sec. 3) requires personal service upon the parents of children alleged to be dependent and neglected (Article 2331, V.A.C.S.), unless the requirement is waived, or the parent entitled to such service enters an appearance in the cause. Appellee's position is that Toler appeared at the trial, after receiving in advance actual notice of the hearing set for December 20, to assert his interest in his child then in custody of the welfare unit, and in course of the trial made his general appearance.

McDonald states the general rule:

"A general appearance is entered whenever the defendant invokes the judgment of the court in any way on any question other than that of the court's jurisdiction, without being compelled to do so by previous rulings of the court sustaining the jurisdiction." 2 McDonald: Texas Civil Practice, sec. 9.04, p. 367, citing St. Louis & S.F.R.R. Co. v. Hale, 109 Tex. 251, 206 S.W. 75 (1918); Bates v. Smith, 155 Tex. 443, 289 S.W.2d 215 (1956).

At the hearing on motion for new trial Toler testified that at the trial he joined Mrs. Toler in requesting her counsel to "ask for a postponement for us."

An appearance to request a continuance, or delay of the trial, has been held in Texas to be a general appearance in a cause, even in the absence of service of citation. Republic Oil & Gas Co. v. Owen, 210 S.W. 319 (Tex.Civ.App., Fort Worth 1919, writ ref.); Briggs v. Ladd, 64 S.W.2d 389 (Tex.Civ.App., San Antonio 1933, no writ); Waco Hilton Hotel Co. v. Waco Development Co., 75 S.W.2d 968 (Tex. Civ.App., Waco 1934, writ dism'd); Stone v. Miller, 134 S.W.2d 862 (Tex.Civ.App., Texarkana 1939, writ dism'd jdgmt cor.).

█ In the early case of York v. State, 73 Tex. 651, 11 S.W. 869 (1889), the Supreme Court stated, "An appearance is said to be strictly voluntary when, without the service of process, a defendant in some manner indicates his intention to submit his person and cause to the jurisdiction of the court." 11 S.W. 870, col. 1. It is immaterial that the party making such appearance did not intend the results flowing from his actions. See McDonald, *supra*, p. 369, and cases cited. In accord: Gieseck v. Ross, 243 S.W.2d 873 (Tex.Civ.App., Fort Worth 1951, no writ); Landram v.

Robertson, 195 S.W.2d 170 (Tex.Civ.App., San Antonio 1946, writ ref. n.r.e.).

■ Toler was not a silent figurehead in the courtroom, observing the proceedings without participating, but sought an adjudication of the court which would have permitted him and his wife to have custody of all three children and take them to West Virginia to live. Toler testified regarding the plan under the examination of counsel as follows:

"Q. . . . and you are asking the Court at this time to grant you the temporary custody . . . we were talking about . . . it wasn't going to be a permanent thing, it was going to be temporary custody so that the Court can determine what is, if things were going to be able to work out and this would only be a temporary placement?

"A. Yes, sir, I do.

"Q. And you are willing, at this time, to deposit into the Court a reasonable bond and we talked about this, the Court may set it, to insure that you will appear here at a temporary hearing or a final hearing with the children and that you will also be in contact with the welfare there in West Virginia where you live so they can evaluate the situation as it stabilizes?

"A. Yes, sir.

"Q. And you realize if you don't appear then this money will be forfeited over and you will lose that money?

"A. Yes, sir.

"Q. And you want your children bad enough to want to do this?

"A. Yes, sir, I do."

Later in the trial, after introduction of all evidence, the court heard oral argument of counsel, in which Mrs. Toler's attorney again presented the plan to allow temporary custody to rest in Toler and his wife, permit them to take the three children to West Virginia, subject to further action of the court after reports from the West Virginia Welfare authorities on whether the plan was working, and with Toler's reappearance in Texas with the children, if required, to be guaranteed by his bond posted with the court. At the conclusion of the argument, the court asked, "Mr. Toler, do you have any closing statement to make?", to which Toler replied, "No, sir, nothing only that I would agree with him [counsel for Mrs. Toler] on everything that he said."

Thus Toler adopted counsel's request for a favorable adjudication by the court of Toler's rights in his child. The court later rejected the plan tendered and entered the order terminating Toler's parental rights in the child.

By his actions Toler made his appearance in the case, seeking "an adjudication by the court on some question." Investors Diversified Services, Inc. v. Bruner, 366 S.W.2d 810, 815 (Tex.Civ.App., Houston 1963, writ ref. n.r.e.).

Appellant contends that to satisfy the due process requirements of the Fourteenth Amendment to the Constitution of the United States, "a parent must have a meaningful opportunity to present evidence in such proceedings, and where the parent did not receive such notice of the hearing, the court must entertain a motion to set aside the decree." In this contention appellant relies on the decision in Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), and the later decision in F—— v. P——, 479 S.W.2d 124 (Tex.Civ. App., San Antonio 1971, writ ref. n.r.e.) which followed the holding in *Armstrong*.

The rule of *Armstrong*, and the later decision by the San Antonio Court of Civil Appeals, are not controlling under the facts of this case, which are easily distin-

guishable from the facts of both *Armstrong* and the Texas case.

In *Armstrong*, as pointed out by the Court, the parent did not have "the slightest inkling of the pendency of these adoption proceedings." Service of citation was not made, and the parent made no appearance at the adoption hearing. The first word the natural parent had of the adoption was after the final order of adoption had been entered. The parent promptly filed a motion to set aside the decree and for a new trial, upon the ground that he had been given no notice of the adoption proceedings.

The Supreme Court observed that if the parent had been given timely notice, the burden of proving that the parent for a period of two years had failed to contribute to the limit of his means to support of the child, thereby rendering his consent unnecessary, would have been upon the party seeking to adopt the child. But the parent was faced, on his first appearance in court after the adoption, with the task of overcoming an adverse decree, and with the burden of affirmatively showing "that he had contributed to the support of his daughter to the limit of his financial ability over the period involved." Since "where the burden of proof lies may be decisive of the outcome," and the burden would not have been imposed upon the parent if he had been given timely notice, the Court held that due process had failed. The opportunity to be heard, the Court decided, "is an opportunity which must be granted at a meaningful time and in a meaningful manner. The trial court could have fully accorded this right to the petitioner [parent] only by granting his motion to set aside the decree and consider the case anew."

Decision in the case before the San Antonio Court of Civil Appeals turned on facts similar to the facts in *Armstrong*. There had been a hearing, in proceedings to have a child declared neglected and dependent, which culminated in termination of the father's parental rights. The father had no notice of the proceeding and did not appear. The appellate court held ". . . it was the duty of the trial court, since it found that the father had no notice of, and did not appear in, the prior proceedings, to set such order aside and 'hear the case anew' . . ."

Unlike those cases, here the appellant knew for nine months or more that the proceedings had been filed, kept in communication with the child welfare unit throughout this period, and received written notice in November that a trial would be held on December 20. Appellant arrived in Austin four days before the trial, consulted his wife and her attorney, appeared in court at the appointed time and through counsel representing his wife sought to postpone the hearing, failing in which he remained and took part in the entire proceedings. By his testimony and through counsel's argument after the evidence had been heard, appellant sought an adjudication by the court that appellant have custody of his child and the two children of his wife's prior marriage. We conclude that appellant made a general appearance and thereby waived service of citation.

The judgment of the trial court is affirmed.

Affirmed.