James **FRIDL**, Individually and d/b/a Cross Marketing, Inc., and Cross Marketing of Texas, Inc., Appellant,

v.

Thomas W. **COOK**, Appellee.

No. 08–94–00392–CV.

Court of Appeals of Texas, El Paso.

Aug. 31, 1995.

Rehearing Overruled Oct. 4, 1995.

508

Hector De Leon, Austin, for appellant.

James P. Boldrick, Dick R. Holland, Boldrick, Clifton, Nelson & Holland, Midland, for appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

LARSEN, Justice.

This is an appeal from the trial court's order denying defendant's motions to compel arbitration, stay litigation, and quash discovery requests. In addition to denying defendant's motions, the trial court ordered that all arbitration be stayed "pending the determination ... of all matters in controversy between the parties." We affirm in part and reverse in part.

### FACTS

In 1990, Thomas W. Cook entered into a written agreement with Cross Marketing, Inc., under which Cook would sell and service insurance policies, annuities, and investments for CMI throughout West Texas and New Mexico. In return, Cook would receive

50 percent commission and other compensation for the sales. CMI's president, James Fridl, signed the contract as CMI's representative. The contract contains an arbitration clause, which states:

> Any and all controversies, disputes or claims arising out of or relating to this Agreement or a breach hereof, except as otherwise provided herein, shall be resolved by arbitration to be held in Houston, Texas, in accordance with the rules then observed by the American Arbitration Association, and judgement upon any award rendered may be entered by any court of competent jurisdiction. The parties shall bear the cost of such arbitration equally.

Cook first filed suit in federal court alleging that he was owed commissions under the contract. Cook made a demand for arbitration under the contract in June 1994, which he later withdrew in a motion for nonsuit without prejudice addressed to the American Arbitration Association. The federal suit had meanwhile been dismissed, and Cook filed a second suit in state court. In this suit, Cook sued "James Fridl d/b/a Cross Marketing, Inc." Cook's first amended petition alleged breach of contract, tortious interference, and fraud against Fridl, as alter ego of CMI.

Fridl entered a general denial. Cross Marketing, Inc. moved to stay litigation and compel arbitration under the contract, pursuant to Tex.Rev.Civ.Stat.Ann. art. 225, § B (Vernon 1973).[1] The trial court denied CMI's motion, and further ordered all arbitration be stayed "pending the determination ... of all matters in controversy between the parties." The case is before us on Fridl's appeal of this interlocutory order. We affirm in part and reverse in part.

## JURISDICTION

As a threshold issue, we must decide whether we enjoy jurisdiction to hear this appeal from the trial court's interlocutory order refusing to compel arbitration; Cook claims we do not. Generally this Court has no jurisdiction to review interlocutory orders, unless such appeal is permitted by rule or statute. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992). The Texas General Arbitration Act does provide for such interlocutory review, stating that:

> Sec. A. An appeal may be taken from:
> (1) An order denying an application to compel arbitration ...
> (2) An order granting an application to stay arbitration ...

> .    .    .    .    .

> Sec. B. The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action. Tex. Rev.Civ.Stat.Ann. art. 238–2 (Vernon 1973).

Fridl is clearly appealing the trial court's ruling on the application to compel arbitration, as well as the order staying all arbitration proceedings. Thus, by virtue of the arbitration act, we conclude that we have jurisdiction to hear this appeal.

## PARTIES DEFENDANT

This Court finds troublesome the designation and role of parties defendant here, a confusion to which both plaintiff and defendant(s) have contributed. Cook has sued "James Fridl d/b/a Cross Marketing Inc." Fridl has answered with a general denial. Fridl individually filed his cost bond perfecting this appeal. Cross Marketing, Inc., although at least nominally a corporate entity, has never been named as a corporate defendant, has not been served with citation, nor filed an answer. It was CMI, however (without Fridl) who filed the motion for stay of litigation and motion to quash discovery, the orders denying which Fridl now appeals. Fridl denies plaintiff's allegations of alter ego, and there have been no findings or admissions on that issue. We can make sense of this only by interpreting CMI's motion to stay as a general appearance in this

---

1. "On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration." Tex.Rev.Civ.Stat.Ann. art. 225, § B (Vernon 1973).

case, and its submission to the trial court's jurisdiction over it as a party defendant. Appellee has not challenged Fridl's standing to urge on appeal CMI's right to arbitration. In short, Fridl and CMI seem to be operating interchangeably in this litigation, with the acquiescence of all parties. We will analyze the issues on appeal from that perspective.

### STANDARD OF REVIEW

In reviewing factual questions concerning an order denying arbitration, we use a "no evidence" standard. *Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.*, 849 S.W.2d 380, 384 (Tex.App.—Houston [14th Dist.] 1993, writ denied). We review legal conclusions de novo. *Catholic Diocese of Brownsville, Texas v. A.G. Edwards & Sons, Inc.*, 919 F.2d 1054 (5th Cir. 1990).

### ENFORCEABILITY OF ARBITRATION CLAUSE

Appellant Fridl brings three points of error, the first urging that the trial court erred in denying the motion to compel arbitration and stay litigation, as he did not determine whether the parties had agreed to arbitrate, and if so, the scope of such agreement. Fridl urges that whatever obligations he might have toward Cook are necessarily based on the 1990 contract. All claims, he argues, whether framed in contract or tort, whether against the corporate entity or Fridl as alter ego, rise and fall with the contract containing the arbitration clause.

Plaintiff Cook, on the other hand, successfully persuaded the trial court that this lawsuit is not a dispute or claim arising out of or relating to the contract. His argument is based on two premises. First, Cook asserts that his claims against Fridl sound generally in tort, and therefore the trial court properly declined to compel arbitration under the contract. Second, he argues that because the lawsuit is against James Fridl, who was not a party to the contract, and only parties to the

contract can compel arbitration, Fridl cannot compel arbitration.[2]

We begin our analysis by noting that arbitration, as a means of settling disputes between parties, is favored by Texas courts. *Brazoria County v. Knutson*, 142 Tex. 172, 176 S.W.2d 740, 743 (1943). The party opposing arbitration bears the burden of proving no valid arbitration agreement exists as to the matters in controversy. *Prudential Securities, Inc. v. Banales*, 860 S.W.2d 594 (Tex.App.—Corpus Christi 1993, no writ). The courts must indulge every reasonable presumption in favor of arbitration, and all doubts as to the arbitrability of an issue must be decided in favor of arbitration. *D. Wilson Construction Co., Inc. v. McAllen I.S.D.*, 848 S.W.2d 226 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.).

### ARBITRATION OF PLAINTIFF'S CLAIMS

The test we employ in determining whether a tort claim is subject to arbitration is:

[W]hether the particular tort claim is so interwoven with the contract that it could not stand alone or, on the other hand, is a tort completely independent of the contract and could be maintained without reference to the contract. *Valero Energy Corp. v. Wagner & Brown*, 777 S.W.2d 564, 566 (Tex.App.—El Paso 1989, writ denied).

Cook's first amended petition makes claims against Fridl for breach of contract, fraud in inducing Cook to perform services through Fridl's other corporation, rather than under the contract, and tortious interference with contract. The specific allegations Cook makes are:

I. *First Claim*

On February 6, 1990, COOK entered into a contractual agreement with Defendant for the sale and service of insurance, annuities and investment products

---

2. In his appellate brief, Cook suggests a third reason for affirming the court's order: an implied finding that the contract was unconscionable. There is no evidence to support this theory, so we cannot affirm on that ground. *Hearthshire Braeswood Plaza Ltd. Partnership*, 849 S.W.2d at 384.

to be marketed in the States of Texas and New Mexico. . . .

．　　．　　．　　．　　．

FRIDL has breached the contract by refusing to pay COOK the commission specified within the contract, and without valid reason, has refused to account to Cook for the commissions owing.

This is a simple breach of contract claim, and is clearly subject to the arbitration clause within the contract. TEX.REV.CIV.STAT.ANN. art. 224 (Vernon Supp.1995); *Valero*, 777 S.W.2d at 566. It is contingent, however, on a finding that Fridl is CMI's alter ego. Alter ego is a factual issue, and Cook has asked for a jury trial on all factual issues. It might enhance judicial economy to submit the breach of contract claim to arbitration first, as an alter ego finding matters little if the contract was not breached, or if Cook was not damaged.[3] Nevertheless, we cannot say the trial court abused its discretion here. Cook must prevail on both allegations, breach of contract and alter ego, before he can succeed on this claim. Although his breach of contract claim must be arbitrated, he is entitled to a jury trial on the issue of alter ego. The trial court may properly hold arbitration in abeyance while determining alter ego. Indeed, this seems the best way to insure Fridl's participation in the arbitration if he is adjudicated CMI's alter ego and held ultimately responsible for CMI's breach of contract, if any.[4] On this claim, although we emphasize that the parties' rights under the contract must be decided by arbitration, nevertheless the trial court has not, thus far, erred.

## II. *Second Claim*

In his second claim, Cook alleges:

FRIDL knowingly made the following representations and/or knowingly concealed the following information:

1. FRIDL individually and representing CMI represented that CMI had existing contracts with various insurance companies providing for the marketing and sale of insurance, annuities and other investment related products when in fact CMI did not.

2. That the above referenced contracts provide that CMI can employ agents in such marketing and promotion when in fact no contract existed.

3. That CMI was licensed to sell annuity and insurance products in the State of Texas at the time the contract was entered into when in fact CMI was not licensed to sell insurance products.

4. That CMI had existing contracts with various insurance companies (which CMI did not) FRIDL would perform this contract in the name of CMI when, in truth and in fact, FRIDL formed a company called Cross Marketing of Texas, Inc. as his alter ego to reap the benefits of the marketing program sold under the terms and conditions of the contract between COOK and FRIDL.

5. FRIDL's scheme to defraud consisted of inducing COOK to perform under the contract and to set up CMIT to solicit business under the terms of the contract to the exclusion of COOK, to hide behind his other corporate identities, direct Cook to do business in these other entity names and then claim CMI has not made any money under the Contract and, therefore, not pay commissions earned.

．　　．　　．　　．　　．

By reason of COOK's reliance upon FRIDL's representations and fraudulent

---

**3.** Courts of other jurisdictions have made similar observations where breach of contract and alter ego were both at issue in a case involving arbitration. *See Fisser v. International Bank,* 282 F.2d 231, 234–35 (2nd Cir.1960); *Laborers' Local Union Nos. 472 and 172 v. Interstate Curb & Sidewalk,* 90 N.J. 456, 448 A.2d 980, 984–85 (1982).

**4.** In that regard, one court has held that it is fundamentally unfair to bind an individual to the outcome of an arbitration proceeding, where the

individual had not at the time of the proceeding been adjudicated alter ego, and had not participated in the arbitration. *Southern California Pipe Trades District Council v. Merritt,* 126 Cal. App.3d 530, 179 Cal.Rptr. 794, 801 (1981). Similarly, another court has held that collateral estoppel will not bind an individual, not adjudicated an alter ego at the time of arbitration, as that individual is not a party to the arbitration. *Marcus v. Superior Court for County of Orange,* 75 Cal.App.3d 204, 141 Cal.Rptr. 890, 893 (1977).

concealments of material facts described above, COOK has been damaged in an amount far in excess of the minimum jurisdictional limits of the Court.

This is a fraud claim. As we understand it, Cook claims that Fridl had several alter ego corporations, and that he induced Cook into funneling business through Cross Marketing of Texas, Inc. instead of through CMI. This, Cook claims, enabled Fridl to retain all the profits generated by Cook while claiming that CMI had not shown a profit, and thus that no money was owed under the contract.

We do not see that this is a claim "arising out of or relating to" the contract. Fridl and CMI may have honored their contractual obligations in every respect, and yet be liable for fraudulently inducing Cook to obtain business outside the contract so as to avoid full payment of commissions. We believe this claim is distinguishable from the fraud claim which this Court found subject to arbitration in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wilson*, 805 S.W.2d 38, 40 (Tex.App.—El Paso 1991, no writ). There, Merrill Lynch could not be liable for fraud unless it had breached its obligations under the brokerage contract with Wilson, its client. Here, the fraud claim may be pursued even if no breach of the Cook–CMI contract occurred. We find the trial court did not err in refusing to compel arbitration on this claim.

### III. *Third Claim*

▉▉▉▉ FRIDL as sole shareholder and controller of CMIT [Cross Marketing of Texas, Inc.], caused CMIT to interfere with the contract between CMI and COOK.

This is a claim of tortious interference with contract. It is well settled that a party cannot tortiously interfere with its own contract. *LA & N Interests, Inc. v. Fish*, 864 S.W.2d 745, 748–49 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Barker v. Brown*, 772 S.W.2d 507, 510 (Tex.App.—Beaumont 1989, no writ). The elements of a tortious interference claim are: the existence of a contract subject to interference, an act of interference that was wilful and intentional, proximately causing plaintiff's damages, with actual damage or loss to plaintiff. *Murray v. Crest Construction, Inc.*, 900 S.W.2d 342 (Tex.1995). Although breach of the interfered-with contract is probably the most common measure of damage, tortious interference does not limit the damage for the tort to that alone. The record does not reveal whether Cook depends upon breach of the CMI contract to establish damages under his tortious interference claim.

Fridl cannot be liable for tortious interference if he is the alter ego of CMI, and as the breach of contract between Cook and CMI may be superfluous to this claim even as to damages, we hold it does not meet the *Valero* test. Cook could bring the same tortious interference claims against a wholly unrelated party, who would certainly not be bound to arbitrate under the contract. That Fridl is alleged to be the alter ego of CMI is not necessarily dispositive of the tortious interference claim. We therefore conclude that the trial court did not abuse its discretion in refusing to compel arbitration on Cook's tortious interference claim.

### IV. *Fourth Claim*

▉▉▉ [T]he conduct of FRIDL ... constitutes tortious interference with the prospective contract between COOK and the actual customers who have purchased annuity and investment products.

Again, this is a claim separate and independent from the parties' rights and duties under the contract. Indeed, this claim does not appear related to the contract containing the arbitration clause at all, but rather relates to potential contracts that might arise, absent interference, between Cook and his clients. The trial court did not abuse its discretion in refusing to compel arbitration on this claim.

### *ALTER EGO CLAIM*

▉▉▉ Next, we turn to Cook's more unique argument, that because only a party may compel arbitration and because Cook has chosen to sue only Fridl, who was not a party to the contract between Cook and CMI, that the trial court properly denied arbitration.

This appears to be an issue of first impression in Texas.

Here, we believe that a variation of the *Valero* test is appropriate. If the claim against a non-party to the contract is so interwoven with the agreement that it could not stand alone, then arbitration is appropriate. Certainly, where the basis of a claim against an individual is solely that the individual is alter ego of the corporation which is party to the contract, that claim is so connected to the contract claim that the arbitration clause controls. To hold otherwise would allow a plaintiff, by artful pleading, to avoid arbitration required by the very contract which plaintiff seeks to enforce. A party is not entitled to enforce those portions of a contract which it likes, while avoiding those which it does not. Merely pleading alter ego does not relieve Cook of his obligation to arbitrate. *Steinberg/W.F.I. Foods, Inc. v. D.C.M. and Assoc.*, 522 So.2d 512, 513 (Fla.Dist.Ct.App.1988). We agree with the Florida Court, which observed that:

> We cannot accept the proposition that a party to a contract calling for arbitration may avoid that undertaking by the simple device of joining as defendants in its lawsuit others with which the party has no such agreement to arbitrate [cite omitted]. To permit such an easy means of avoiding a contractual agreement to arbitrate would fly in the face of the Florida legislature's intention . . . to grant legal recognition to arbitration agreements. . . . *Id.*

We think Texas legislation and caselaw similarly require us to honor the arbitration agreement in alter ego situations.

The forum proper for a determination of alter ego, however, is a different question. Surveying how courts of other jurisdictions have handled this question, we find that they generally require the trial court to determine the alter ego question, with referral to arbitration after a finding as to alter ego is made. *Fisser v. International Bank*, 282 F.2d 231, 234 (2nd Cir.1960); *Habitations Limited, Inc. v. BKL Realty Sales*

*Corp.*, 169 A.D.2d 657, 565 N.Y.S.2d 36, 37 (1991); *American Builder's Assoc. v. Au-Yang*, 226 Cal.App.3d 170, 276 Cal.Rptr. 262, 266 (1990); *Ravel v. Dirco Enterprises, Inc.*, 159 A.D.2d 564, 552 N.Y.S.2d 426, 427 (1990); *Laborers' Local Union Nos. 472 and 172 v. Interstate Curb & Sidewalk*, 90 N.J. 456, 448 A.2d 980, 984 (1982). We think this is an appropriate course, and will not vacate the trial court's order staying arbitration if the reason for doing so is to allow a determination of whether Fridl is CMI's alter ego before arbitration is compelled.[5] The breach of contract claim, however, must be arbitrated, and to the extent that the trial court's actions contemplate a stay of arbitration while it determines all issues, including breach of contract, it is in error and must be vacated.

The tortious interference claim is likewise controlled by the finding as to alter ego, as plaintiff Cook can only prevail on that claim if Fridl is not CMI's alter ego. We conclude that determining the issue of alter ego first, before determining the contract claims subject to arbitration, is a reasonable course of action, and the trial court is within its discretion in addressing the issues in that order, provided he does not usurp those matters subject to arbitration. Point of Error One is therefore overruled.

### ENTRY OF ORDER STAYING ARBITRATION

In his second point of error, Fridl urges that the trial court erred in ordering that the arbitration "be stayed pending the determination by this Court of all matters in controversy between the parties. . . ." We sustain this point for two reasons.

First, as pointed out by Fridl, this portion of the trial court's order granted affirmative relief not requested by any party. The only motions before the trial court were the motion to stay litigation and compel arbitration, and motion to quash discovery. Plaintiff had not asked that arbitration be

---

**5.** As noted earlier, a finding of alter ego prior to arbitration will bind Fridl to the outcome of those proceedings. If the arbitration occurred prior to an alter ego finding, however, an argument might be made that the alter ego did not participate in the arbitration, and thus due process considerations forbid that the alter ego be bound.

stayed, and he was not entitled to relief he had never requested. *Bosworth v. Gulf Coast Dodge, Inc.*, 879 S.W.2d 152, 160 (Tex. App.—Houston [14th Dist.] 1994, no writ). Fridl preserved this complaint by pointing it out to the trial court in his motion for rehearing. We believe the trial court abused its discretion by granting this relief.

██ Second, as we discussed earlier in this opinion, the trial court does not have jurisdiction to determine all matters in controversy here. The breach of contract issues must be decided by arbitration, as the parties originally agreed. Although we believe the trial court has discretion to decide in which order the breach of contract and alter ego issues are to be resolved, staying arbitration until it determined all matters in controversy exceeded its authority. Point of Error Two is sustained.

### REFUSAL TO QUASH DISCOVERY AGAINST CMI

██ In Fridl's third point of error, he claims that the trial court erred in refusing to quash discovery requests against CMI, as it has never been named as an independent defendant nor been served with citation in this cause. We believe CMI has waived complaint by making a general appearance in the case.

██ It is true, as Fridl urges, that a trial court only possesses jurisdiction over parties properly before it. It is equally true, however, that a party generally appearing in a case waives any complaints as to personal jurisdiction.

██ [A] general appearance occurs when the party 'invokes the judgment of the court in any way on any question other than that of the court's jurisdiction, without being compelled to do so by previous ruling of the court sustaining the jurisdiction.' *Smith v. Amarillo Hospital Dist.*, 672 S.W.2d 615, 617 (Tex.App.—Amarillo 1984, no writ). *See also Toler v. Travis County Child Welfare Unit*, 520 S.W.2d 834, 836 (Tex.Civ. App.—Austin 1975, writ ref'd n.r.e.); 3 R. McDonald, Texas Civil Practice § 11:9 (1992). In determining whether a voluntary appearance is a general appearance, the em-phasis is on affirmative action which impliedly recognizes the court's jurisdiction over the parties. Mere presence of a party or his attorney in the courtroom at the time of a hearing or a trial, where neither participates in the prosecution or defense of the action, is not an appearance. *Smith*, 672 S.W.2d at 617.

We find that CMI's motion to compel arbitration and to stay litigation was an affirmative act recognizing the court's jurisdiction. We therefore conclude that CMI has waived any complaints as to lack of personal jurisdiction. Fridl's Point of Error Three is overruled.

### CONCLUSION

We conclude in this case that Cook's breach of contract claims are subject to arbitration, and that the trial court may not decide them. We nevertheless hold that the issue of alter ego, essential to establishing Fridl's liability here, is a fact question not subject to the arbitration clause in the parties' contract. Moreover, for Fridl to be bound by the arbitration, he must either be adjudicated CMI's alter ego, or otherwise actively participate in the arbitration proceedings. To insure that all necessary parties are bound by the arbitration, it is within the trial court's discretion to determine the alter ego issue before arbitration proceeds.

We emphasize, however, that the trial court cannot decide the breach of contract issue; that was clearly an area the parties agreed to arbitrate when they entered their contract. We therefore reverse that portion of the trial court's order staying arbitration "pending the determination by this Court of all matters in controversy between the parties." In all else, the trial court's order is affirmed.