CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, et al., Appellants,

v.

CELEBRITY, INC., Appellee.

No. 12–96–00041–CV.

Court of Appeals of Texas, Tyler.

Aug. 16, 1996.

Rehearing Overruled Sept. 20, 1996.

---

1. I also disagree with the majority's analysis in points of error five, seven, and eight.

**376**

Alan Lawrence Rucker, Wade Lowrie McClure, Dallas, for appellants.

Joseph E. Ackels, David M. Pruessner, Dallas, Jeffery Janar Shaver, Tyler, Snow E. Bush, Jr., Longview, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

PER CURIAM.

This is an accelerated interlocutory appeal from the trial court's order denying Appellants', Certain Underwriters at Lloyd's, London ("Underwriters"), motion to compel arbitration and/or stay proceedings ("Motion to Compel Arbitration"). Two points of error are raised on appeal. The case was submitted to this Court for decision following oral arguments on June 13, 1996. We will affirm.

## I. Factual Background

The underlying suit arose out of a coverage dispute between Underwriters and Celebrity, the plaintiff below. Celebrity obtained insurance coverage from Underwriters for indemnity on certain kinds of claims that might be filed by Celebrity's employees. Thereafter, Mr. Attaway, an employee of Celebrity, made a claim against Celebrity and Celebrity paid it. Celebrity then sought reimbursement for Attaway's claim from Underwriters. They, however, denied Celebrity coverage on grounds that Attaway's claim was excluded from coverage under the policies because it was for an occupational illness, which was a stated exclusion under the policy.

On September 20, 1995, Celebrity brought suit against Underwriters and others. Its causes of action included: (1) damages for violation of § 21.21 of the TEXAS INSURANCE CODE; (2) declaratory relief in the nature of construction of the insurance policies; (3) relief for breach of contract; (4) relief on the basis of bad faith; and (5) relief on the basis of negligence. Thereafter, on or about November 20, 1995, Underwriters filed their Motion to Compel Arbitration. In that motion, Underwriters alleged that:

The Underwriters Contracts contain arbitration clauses which provide for the arbitration of all disputes relating to the contracts. The arbitration clause contained in the contracts is binding under both federal

and state law.[1]

Underwriters then directed the court to the identical arbitration clauses in the two Employer Excess Indemnity Policies ("EEI policies") at issue.[2] After hearing Underwriters' Motion to Compel Arbitration, the trial court denied the request for arbitration. Thereafter, Underwriters brought this interlocutory appeal under the authority of TEX.CIV.PRAC. & REM.CODE § 171.017.

## II. ISSUES PRESENTED ON APPEAL

By their first point of error, Underwriters allege that the trial court erred in denying Underwriters' Motion to Compel Arbitration. By their second point, they allege that the trial court erred in finding that the arbitration clause at issue had to be construed against its drafters. Although separately alleged, the crux of both points is whether the trial court's narrow construction of the language in the arbitration clause was error in light of public policy favoring resolution of disputes by arbitration. As did Underwriters, we will address these points together.

### A. STANDARD OF REVIEW

■ In reviewing the denial of a motion to compel arbitration, generally, a "legal sufficiency" or "no evidence" standard of review is employed. *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.,* 896 S.W.2d 352, 356 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.,* 849 S.W.2d 380, 384 (Tex.App.—Houston [14 Dist.] 1993, writ denied). Under such a review, the court must consider only the evidence and inferences, that when viewed in their most favorable light, tend to support the finding under attack, and it must disregard all evidence and

inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). Underwriters, however, citing *Fridl v. Cook,* 908 S.W.2d 507, 511 (Tex.App.—El Paso 1995, no writ), argues that in the instant case we should apply a *de novo* standard of review because we must review the trial court's legal conclusion as to how the arbitration clause should be construed.[3] Celebrity argues in response that *de novo* review would be unduly burdensome because the proceeding below was summary in nature. While the proceeding below was indeed summary, it must also be noted that on the trial court's instruction and the parties' agreement, no evidence was introduced at the hearing. Since the only thing before us is the court's legal interpretation of the arbitration clause, we conclude that *de novo* review is appropriate in this case. *Fridl,* 908 S.W.2d at 511; *Transwestern,* 809 S.W.2d at 592.

### B. THE SCOPE OF THE ARBITRATION CLAUSE

■ Under Texas law, in order to compel arbitration, a party must establish: (1) the existence of a valid agreement to arbitrate; and (2) that the claims asserted by the plaintiff are within the scope of the arbitration agreement. *Phillips v. ACS Mun. Brokers, Inc.,* 888 S.W.2d 872, 875 (Tex.App.—Dallas 1994, no writ); *See* TEX.CIV.PRAC. & REM.CODE § 171.001, *et seq.* (Vernon Supp.1996). Here, the first factor is not at issue because the parties stipulated that Article XVI of both EEI policies contains the following arbitration clause:

Should any difference of opinion arise between the Underwriters and the insured which cannot be resolved in the normal course of business with respect to the in-

---

1. On March 7, 1996, Underwriters filed a motion for leave to file petition for writ of mandamus in which they asserted their entitlement to arbitrate under federal law. That motion was overruled by this Court on March 29, 1996.

2. It is undisputed by the parties that the Occupational Accident Protection Policy issued to Celebrity by Underwriters does not contain an arbitration clause, and that policy is not at issue in this appeal.

3. In *Fridl,* the court stated: "In reviewing factual questions concerning an order denying arbitra-

tion, we use a 'no evidence' standard. [citation omitted] We review legal conclusions *de novo.* *Catholic Diocese of Brownsville, Texas v. A.G. Edwards & Sons, Inc.,* 919 F.2d 1054 (5th Cir. 1990)." *Fridl,* 908 S.W.2d at 511. This *de novo* standard was also employed by Chief Justice Enoch in *Transwestern Pipeline v. Horizon Oil & Gas Co.,* 809 S.W.2d 589 (Tex.App.—Dallas 1991, no writ) wherein it was stated that the determination of whether a party had waived his right to arbitration was a question of law subject to *de novo* review.

terpretation of this Policy *of* the performance of the respective obligations of the parties under this Policy, the differences shall be submitted to arbitration. (emphasis added)

■ Once the existence of a valid arbitration agreement has been established, the scope of the agreement is then determined as follows: "A clause requiring arbitration is interpreted under contract principles and the language contained within will be enforced according to its plain meaning, unless this would defeat the intention of the parties." *Pepe Intern. Development Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 930 (Tex.App.—Houston [1st Dist.] 1996, no writ). At the same time, it must be noted that there is a strong presumption in Texas public policy favoring arbitration. *Id.; Houston Lighting & Power Co. v. San Antonio*, 896 S.W.2d 366, 370 (Tex.App.—Houston [1st Dist.] 1995, no writ). This presumption in favor of arbitration is imposed whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt. *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 356 (Tex.App.—Houston [1st Dist.] 1995, no writ). Here, although not artfully stated, the plain language of the arbitration clause *as written* requires the parties to arbitrate conflicts concerning interpretation of the policy as that policy pertains to the performance of the parties respective obligations thereunder.

At the hearing on their Motion to Compel Arbitration, Underwriters argued that the highlighted word "of" in the arbitration clause should have been "or" and that they would prefer that the policy be read using "or" as this would conform to public policy favoring arbitration. Underwriters, however, conceded that the clause was not ambiguous or unintelligible as written.[4]

While, as stated above, there is a strong presumption favoring the arbitration of disputes, such a presumption cannot be applied to stretch a contractual clause beyond the scope intended by the parties or to allow modification of the plain and unambiguous

provisions of an agreement. *See Belmont*, 896 S.W.2d at 356. Since the plain meaning of the arbitration clause before the trial court was not ambiguous or "fairly debatable," and there was no evidence that the parties had intended the arbitration clause to state otherwise, the trial court was not under an obligation to presume that the parties intended to replace "of" with "or." Thus, the trial court correctly interpreted the arbitration clause using "of" instead of "or." *Id.*

## C. THE UNDERLYING LITIGATION DISPUTE

Having decided that the arbitration clause should be interpreted as written, we now must identify the nature of the underlying dispute to see if it falls within the scope of the arbitration clause. At the hearing, Underwriters agreed with Celebrity that the central issue should be characterized as follows:

> I think that the—position and the decision has been made by my client [Underwriters] that it's [Mr. Attaway's claim] an occupational disease. And that's the reason it's denying coverage. They [Celebrity] assert that it's an occupational injury, and therefore, there would be coverage. I think there may be some other—other defenses, but I think that's the primary one.

This characterization is supported by the record before us.

## D. APPLICABILITY OF THE ARBITRATION CLAUSE TO THE UNDERLYING DISPUTE

■ As the trial court correctly noted, the arbitration clause before us requires arbitration of the *interpretation of the policy* as it pertains to performance of the parties' respective obligations thereunder. Here, the underlying dispute is not one of policy interpretation. Instead, it appears to be a factual dispute requiring the gathering of evidence to determine whether Underwriters correctly characterized Attaway's underlying claim as one for occupational disease. Accordingly, we conclude that the underlying dispute was

---

4. As can be seen, the arbitration clause as written makes the phrase "performance of respective obligations" dependent upon the phrase "inter- pretation of this Policy"; whereas the word "or" substituted in "of's" place would make the two phrases alternative topics for arbitration.

not encompassed by the arbitration clause in the EEI policies.

### III. Conclusion

Having concluded that the arbitration clause should be interpreted as written and that the parties' underlying dispute was not within the scope of the arbitration clauses of the EEI policies as written, we hold that the trial court neither erred in its interpretation of the arbitration clause nor in its denial of the Motion to Compel Arbitration. Accordingly, Underwriters' points of error are overruled, and the trial court's order denying arbitration is **affirmed.**