COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

BAKER HUGHES INTEQ,                                  )

                                                                              )               No.  08-02-00079-CV

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
109th District Court

LOTUS, L.L.C.,                                                    )

                                                                              )           
of Andrews County, Texas

Appellee.                           )

                                                                              )                    (TC# 15,749)

                                                                              )

 

 

O
P I N I O N

 

This is an
interlocutory appeal by Appellant Baker Hughes Inteq,
which seeks to compel arbitration against Appellee
Lotus, L.L.C.  Appellant brings three
issues:  (1) An arbitration agreement
existed between Appellant and Appellee; (2) the
arbitration agreement need not have been signed by both the Appellee
and its attorney; and (3) Appellant did not waive its right to compel
arbitration by signing a subsequent agreement. 
We affirm.

SUMMARY
OF THE EVIDENCE








Dan Snow, the
Vice-President of Operations for Appellee, called
Appellant to obtain an estimate for drilling a horizontal well in Andrews
County.  Appellant submitted a cost
estimate, which contained an arbitration clause.  The estimate was never signed, and as denoted
on the estimate, Appellee objected to parts of the
estimate with the result that verbal changes were made to the proposal
subsequently.  Appellee
verbally authorized Appellant to drill the well, and Appellant submitted to Appellee an invoice containing an arbitration clause
afterwards, which noted on top that it contained an arbitration clause.  Appellee=s employee, Jim Akin, initialed the
invoice.  Appellee
made no objections to the arbitration clauses in either the estimate or the
invoice.  

After the well was
dug, Appellee discovered wrong coordinates had been
used.  In a letter written by Appellee=s
attorney and signed by both parties, Appellant and Appellee
agreed that they would settle the ancillary expenses for $195,000 and Appellant
would dig a new well with the correct coordinates.  The parties also entered into a letter
agreement that formalized the agreement, which contained a merger clause and
also specifically stated none of Appellant=s
liability and defenses were waived against Appellee.  The letter agreement did not incorporate the
terms of the first drilling agreement nor did it reference the arbitration
clause.

On May 23, 2001, Appellee filed suit to recover damages occurring from the
incorrectly drilled well.  Appellant
sought to compel arbitration, and the trial court denied the motion.  

DISCUSSION








In determining
whether to compel arbitration, the court must decide two issues:  (1) whether a valid, enforceable arbitration
agreement exists; and (2) if so, whether the claims asserted fall within the
scope of the agreement.  Dallas Cardiology Assocs., P.A. v. Mallick,
978 S.W.2d 209, 212 (Tex.App.‑-Texarkana 1998,
pet. denied); Nationwide of Bryan, Inc. v. Dyer, 969 S.W.2d 518, 520 (Tex.App.‑-Austin 1998, no pet.).  The court has no discretion but to compel
arbitration if the answer to both questions is affirmative.  Dallas Cardiology
Assocs., P.A., 978 S.W.2d at 212; Merrill Lynch, Pierce, Fenner & Smith v. Eddings,
838 S.W.2d 874, 878 (Tex.App.‑-Waco 1992, writ
denied).  Whether the parties have
agreed to arbitrate is a question of fact to be summarily determined by the trial
court.  Tex.Civ.Prac.&Rem.Code Ann. '
171.021(b)(Vernon Supp. 2002); see also Weber v. Hall, 929 S.W.2d 138,
141 (Tex.App.‑-Houston [14th Dist.] 1996, orig.
proceeding).

Appellate courts
use a Ano
evidence@ standard
for review of factual questions.  Fridl
v. Cook, 908 S.W.2d 507, 511 (Tex.App.‑-El
Paso 1995, writ dism=d
w.o.j.). 
In a no evidence point, we consider only the evidence that supports the
finding, while disregarding the evidence to the contrary.  Hearthshire Braeswood Plaza Ltd. Partnership v.
Bill Kelly Co., 849 S.W.2d 380, 384 (Tex.App.-‑Houston
[14th Dist.] 1993, writ denied).  If
there is any evidence of probative force to support the finding, the point must
be overruled and the finding upheld.  Id.  

Legal conclusions,
on the other hand, are subject to de novo review.  Fridl, 908
S.W.2d at 511; see also Certain Underwriters at Lloyd=s of London v. Celebrity, Inc., 950
S.W.2d 375, 377 (Tex.App.‑-Tyler 1996), writ
dism=d
w.o.j., 988 S.W.2d 731 (Tex. 1998)(per curiam).  De novo review is appropriate when the
legal interpretation of the arbitration clause, and no fact issue, is before
the court.  Nationwide of Bryan, Inc.,
969 S.W.2d at 520; Certain Underwriters at Lloyd=s of London, 950 S.W.2d at 377; Texas
Private Employment Ass=n
v. Lyn‑Jay Int=l,
Inc., 888 S.W.2d 529, 531 (Tex.App.-‑Houston
[1st Dist.] 1994, no writ).








Generally, an
arbitration agreement must be written and concern a controversy that either
exists at or subsequent to the date of the agreement.  Tex.Civ.Prac.&Rem.Code Ann. '
171.001(a) (Vernon Supp. 2002).  Section
171.002 of the Texas Civil Practices and Remedies Code states that an
arbitration agreement must be written and signed by both parties and their
attorneys if the agreement involves individuals for services and for which
services the consideration furnished by the individual is not more than $50,000.
 Tex.Civ.Prac.&Rem.Code Ann. '
171.002(a)(2), (b).

As discussed
below, a written arbitration agreement was originally a part of the contract to
drill the horizontal well.  The parties
however dispute whether (1) it had to be signed by the parties and their
attorneys and (2) the letter agreement superceded the original agreement
containing the arbitration clause.  The
parties involved in this dispute are both corporations; thus, Section 171.002
is inapplicable and the signatures of the attorneys and the parties were not
necessary to validate the arbitration agreement.[1]  Therefore, we sustain Appellant=s first two issues.  However, we must still decide whether the
merger clause of the letter agreement superceded the arbitration agreement.








The primary
concern of a court in construing a written contract is to ascertain the true
intent of the parties as expressed in the instrument.  Nat=l
Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc., 907 S.W.2d 517,
520 (Tex. 1995).  If a written contract
is so worded that it can be given a definite or certain legal meaning, then it
is not ambiguous.  Id.;
Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  Parol evidence is
not admissible for the purpose of creating an ambiguity.  CBI Indus., Inc.,
907 S.W.2d at 520; Universal C.I.T. Credit Corp. v. Daniel, 150 Tex.
513, 243 S.W.2d 154, 157 (1951). 
If, however, the language of a policy or contract is subject to two or
more reasonable interpretations, it is said to be ambiguous.  CBI Indus., Inc., 907 S.W.2d at 520; see
Glover v. Nat=l
Ins. Underwriters, 545 S.W.2d 755, 761 (Tex. 1977).  Whether a contract is ambiguous is a question
of law for the court to decide by looking at the contract as a whole in light
of the circumstances present at the time the contract was executed.  CBI Indus., Inc., 907
S.W.2d at 520; Coker, 650 S.W.2d at 394.  Only where a contract is first determined to
be ambiguous may the courts consider the parties=
interpretation and admit extraneous evidence to determine the true meaning of
the instrument.  CBI Indus., Inc.,
907 S.W.2d at 520. 
An ambiguity in a contract may be either Apatent@ or Alatent.@ 
Id.  A patent ambiguity is
evident on the face of the contract.  Id.  If a contract which is unambiguous on its
face is applied to the underlying subject matter of the contract and an
ambiguity appears by reason of some collateral matter, the ambiguity is latent.  Sidelnik v. Am. States Ins. Co., 914 S.W.2d 689, 691 (Tex.App.‑‑Austin 1996, writ denied).

Appellant and Appellee formed a contract for the drilling of a horizontal
well when Appellant submitted an estimate and Appellee
authorized the drilling.  See
generally, Tex. Ass=n
of Counties County Gov=t
Risk Mgmt. Pool v. Matagorda County, 52 S.W.3d 128, 139 (Tex. 2000)(holding
an implied-in-fact contract was formed when an insured accepts the benefit, or
the performance, of an insurer).  Since
the performance was unsatisfactory, the parties modified the original contract
in a signed letter and formalized it in a letter agreement, which contained a
merger clause stating:

This Agreement contains the entire
agreement between the Parties hereto with respect to the transaction
contemplated hereby and supercedes and amends all prior understandings,
arrangements and agreements with respect to the subject matter hereof.  No modification hereof shall be effective
unless in writing and signed by the Party against which it is sought to be
enforced.  The Parties may, by written
agreement, make any modification or amendment of this Agreement, but no such
modification or amendment will be effective unless signed by all of the
Parties.

 








Neither the letter nor the letter
agreement contain or reference an arbitration agreement, although both
specifically refer to the invoices and the first drilling agreement.  Appellant argues however that it reserved the
right to arbitration through Paragraph 3, which states that Appellant does not
waive any defenses or claims otherwise available to them in the event of future
litigation arising out of the claims for damages by Appellee
by entering into the agreement.

The letter
agreement supercedes the first drilling agreement.  Within the letter agreement and the signed
letter, there is no specific reference to the first drilling agreement and its
arbitration clause, and we can find no intent by the parties to clearly agree
to have their dispute submitted to arbitration. 
See Teal Const. Co./Hillside Villas Ltd. v. Darren Casey Interests,
Inc., 46 S.W.3d 417 (Tex.App.--Austin 2001, pet.
denied); Porter & Clements, L.L.P. v. Stone, 935 S.W.2d 217 (Tex.App.--Houston [1st Dist.] 1996, no writ); compare,
e.g., Transwestern Pipeline Co. v. Horizon Oil &
Gas Co., 809 S.W.2d 589, 591-92 (Tex.App.--Dallas
1991, writ dism=d
w.o.j.)(AThe
[later settlement] agreement states that the underlying contracts= terms will remain in force unless
expressly modified . . . .@). 
Because the letter agreement superceded the first drilling agreement and
does not reference the specific incorporation of it into the agreement, no
enforceable arbitration clause exists. 
We overrule Appellant=s
third issue.   

The judgment of
the trial court is affirmed.  

 

 

August
29, 2002

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Appellee cites numerous cases for the premise that
the term Aindividual@ may include a corporation.  All cases involved at least one individual in
the purest sense, not a representative of a corporation.