**David A. MUSGRAVE,
Plaintiff–Appellant,**

v.

**HCA MIDEAST, LTD.,
Defendant–Appellee.**

No. 87–3095.

United States Court of Appeals,
Fourth Circuit.

Argued May 2, 1988.

Decided Sept. 14, 1988.

---

ington, D.C., Thomas Moncure, Alexandria, Va., on brief), for defendant-appellee.

Before PHILLIPS, SPROUSE and ERVIN, Circuit Judges.

SPROUSE, Circuit Judge:

David A. Musgrave appeals the judgment of the district court, entered at the close of Musgrave's case, directing the verdict in favor of the defendant HCA Mideast, Ltd., (HCA) in Musgrave's action for breach of contract. Musgrave's action arose out of HCA's termination of his employment as Assistant Administrator for Auxiliary Services at a hospital operated by HCA in Saudi Arabia. On appeal Musgrave argues the district court erred in determining as a matter of law that he was fired during the probation period established in his contract and that the contract allowed termination during the probation period without cause and in granting HCA's motion in *limine* to exclude evidence of Saudi law.

We agree with the district court that Musgrave chose to have his suit governed by American law, rendering evidence of Saudi law inadmissible to alter the terms of the contract. We also agree that under the express terms of the contract Musgrave was still in his probation period at the time of his termination. The district court erred, however, in holding that the contract unambiguously permitted termination without cause during the probationary period and in directing the verdict in HCA's favor. The contract provision relating to termination during the probation period is ambiguous; therefore, the question whether the parties intended to provide for termination without cause during the probation period should have been submitted to the jury. Consequently, we reverse and remand for retrial on that issue.

Nathan Finkelstein (Leonard S. Goodman, Garfinkle, Liotta, Finkelstein & Dranitzke, Washington, D.C., on brief), for plaintiff-appellant.

Elliott Schulder (Peter J. Nickles, Coleman S. Hicks, Covington & Burling, Wash-

I.

In November 1982 HCA offered Musgrave a two-year contract for the position of Assistant Hospital Administrator for Auxiliary Services at a hospital it operated in Saudi Arabia. HCA asked Musgrave to

begin work as soon as possible without awaiting the execution of the anticipated employment contract. On December 22, 1982, the parties signed an agreement entitled "Consultancy Agreement" to govern the period Musgrave worked at the hospital prior to the execution of the employment contract. The Consultancy Agreement provided that Musgrave would work at the hospital for a period of thirty days as an independent contractor and be paid on a *per diem* basis. Either party could terminate the relationship at any time. Musgrave moved to Saudi Arabia and worked for HCA under the Consultancy Agreement for the full thirty days. During that time, he performed the same services he would later perform under the employment contract.

At the end of the thirty-day period, Musgrave returned to the United States, where he executed the formal employment contract. That contract provided for a two-year term beginning February 2, 1983. It stated, however, that Musgrave would be "on probation during the first 90 days of his service hereunder." The contract's termination provisions are set out in paragraph 8, which states in part:

8. *Termination of Employment*

Employee's service under this agreement may be terminated in any of the following ways:

(a) The Employer shall have the right within the probation period set forth in paragraph 1 hereof to terminate Employee's service without prior notice, Saudi service award or completion of contract bonus.

(b) The Employer may cancel this agreement at any time and without prior notice or termination benefits if it is established that the Employee has committed any of the infractions set forth in Saudi law. Such infractions include, but are not limited to, resorting to forgery to obtain employment, being absent without valid reason for more than 20 days in one year or more than 10 consecutive days, assaulting a supervisor, committing an immoral act, the unauthorized use of or illegal traffic in currency or monetary instruments, the importation or posses-

sion of alcoholic spirits, firearms, pornography or other prohibited items, and the improper disposition of items imported for personal use.

Paragraph 12 of the contract contained the following term concerning which law would govern disputes arising under the contract:

12. *Applicable Regulations*

This Agreement shall be construed in accordance with the Laws and Regulations of the Kingdom of Saudi Arabia. The Employee agrees that he may seek resolution of any claim arising under this Agreement under the Saudi Labor and Workmen's Law or the laws of the country of which he is a citizen but not both. The Employee hereby waives any and all rights to seek such resolution under the Saudi Labor and Workmen's Law in the event he seeks such resolution under the laws of the country of which he is a citizen and hereby waives any and all rights to seek such resolution under the laws of the country of which he is a citizen in the event he seeks such resolution under the Saudi Labor and Workmen's Law.

Musgrave returned to Saudi Arabia and began to perform work under the contract. On April 20, 1983, HCA fired him. Musgrave's supervisor informed him that the reason for the firing was that Musgrave appeared unhappy and was "not getting things done." Musgrave took no legal action in Saudi Arabia concerning his firing. Instead, he returned to the United States and filed this suit in the United States District Court for the Eastern District of Virginia.

II.

■ Musgrave's first contention is that the trial court erred in holding that the dispute was governed by Virginia law and not Saudi law and in granting HCA's motion in *limine* to exclude evidence of Saudi law. Musgrave argues that the first sentence in paragraph 12 of the contract requires that the contract be construed in accordance with Saudi law. He interprets

the remainder of the paragraph to give him the option to choose both the law to be applied and the forum in which any dispute will be resolved. He contends that he was entitled to select a United States forum, but also to have the suit governed by Saudi law. We disagree.

Musgrave was entitled under the contract to choose to have his dispute governed by Saudi law. He was given the option to seek resolution of claims under the Saudi Labor and Workmen's Law or the laws of the United States. Paragraph 12 of the contract provides, however, that Musgrave "waives any and all rights to seek such resolution under the Saudi ... law in the event he seeks such resolution under the laws of the country of which he is a citizen...."

The wording of paragraph 12 manifests that in executing this waiver provision the parties were not contemplating the legal terms of art that would have easily explained their intentions. Nevertheless, we have little difficulty in gleaning the parties' intentions from the terms they employed. Looking to the broad terms in which the paragraph discusses Musgrave's choice and the resulting waiver,[1] we are persuaded that the parties intended the language to cover both choice of law and choice of forum. That is, we find the parties intended that Musgrave be given the option to bring suit either in Saudi Arabia or in the United States and that the law of the chosen forum would apply. By exercising this option, Musgrave would waive the right to bring suit in the country not chosen and would also waive application of that country's laws to his suit. By interpreting the

provision in this fashion, we do not mean to imply that the term "resolution" in itself denotes either the parties' choice of forum or their choice of law. We simply interpret paragraph 12 of the contract as expressing the parties' intention to include both choice of forum and choice of law within the scope of that paragraph's option and waiver provisions.

Musgrave's litigation posture is consistent with this interpretation. Although, in his response to HCA's motion for summary judgment, Musgrave argued that Saudi law governed the contract, he only sought to apply Saudi law to one aspect of the case: the question of when his probation period began. The remainder of his arguments relied on principles of American law and citations to American authority.[2] Thus Musgrave apparently concedes that in general American law governs his suit, he merely seeks to apply one particular facet of Saudi law that he perceives to be advantageous to his case. This proposed mixed application of Saudi and American law conflicts with the contract's waiver provision.[3]

### III.

Musgrave's remaining contentions concern the propriety of the trial court's entry of a directed verdict in favor of HCA on his breach of contract claim. He argues that he raised two issues below which the trial court was required to submit to the jury. One is his claim that the time he worked under the Consultancy Agreement should have been counted toward the ninety-day probation period. If the probation period were measured in this way, Musgrave's

1. The paragraph provides that by "seeking ... resolution under the laws of the country of which he is a citizen," Musgrave "waives any and all rights to seek ... resolution under" the laws of Saudi Arabia.

2. For example, Musgrave relied on citation to American cases to argue that certain policy statements allegedly made by HCA gave rise to contractual rights and that contractual choice-of-law provisions are enforceable.

3. As a fallback position, Musgrave argues that evidence of Saudi law should have been admitted as parole evidence of the parties' intent concerning when the probation period was to

begin. He argues that Saudi law required any probation period to begin on the first day of the employment relationship and that that fact was admissible to support other parole evidence tending to show the parties intended the probationary period to include the consultancy period. Since, as is discussed in part III, *infra*, the contract unambiguously *identified the proba*tion period's starting date, the district court was correct in refusing to hear this parole evidence on that point. *Clark v. Ryan*, 818 F.2d 1102, 1105 (4th Cir.1987); *Durham v. National Pool Equipment Co.*, 205 Va. 441, 138 S.E.2d 55, 59 (1964).

termination, which occurred more than ninety days after he began work under the Consultancy Agreement, would have been after the end of the probation period. After the probation period, the contract set limitations on the causes for which an employee could be terminated. The other issue that Musgrave argues should have been presented to the jury is his claim that even if the firing took place during his probation period, the contract did not allow for termination without cause during the probation period. He argues on appeal that the contractual provision governing both claims was ambiguous and that parole evidence would have established his version of the parties' intention.

Under Virginia law parole evidence, of course, is inadmissible to vary the terms of an unambiguous contract. *Clark v. Ryan*, 818 F.2d 1102, 1105–06 (4th Cir.1987); *Durham v. National Pool Equipment Co.*, 205 Va. 441, 183 S.E.2d 55, 59 (1964). Parole evidence is admissible, however, to clarify the terms of an ambiguous contract. *Georgiades v. Biggs*, 197 Va. 630, 90 S.E.2d 850, 854 (1956) (quoting *Shockey v. Westcott*, 189 Va. 381, 53 S.E.2d 17, 20 (1949) ). Virginia also recognizes the rest of the universal litany concerning contract construction. While contracts normally are interpreted by the court as a matter of law, when a contract is ambiguous so that resort to parole evidence is required, construction of the contract in accordance with the evidence of the parties' intent is a task for the jury. *Combs v. Dickenson–Wise Medical Group*, 233 Va. 177, 355 S.E.2d 553, 557 (1987); *Main–Atlantic Corp. v. Francis I. duPont & Co.*, 213 Va. 180, 191 S.E.2d 211, 215 (1972). The interpretation of the ambiguous term must be left to the jury "if, when all the evidence is in, both written and oral, fairminded men might reasonably arrive at different conclusions." *Combs*, 355 S.E.2d at 557 (quoting *Geoghegan Sons & Co. v. Arbuckle Bros.*, 139 Va. 92, 123 S.E. 387, 389 (1924) ).

■ Applying these principles of Virginia law to Musgrave's argument that the probation period ended before he was terminated, we find the trial court's refusal to submit the issue to the jury was justified. Paragraph 1 of the contract states:

"The Employer hereby engages the Employee to serve in its employ . . . for a period commencing on February 2nd, 1983. . . . It is understood and accepted, however, that the Employee will be on probation during the first 90 days of his service hereunder."

This language clearly establishes the beginning date of employment under the contract and identifies the first ninety days of service *under the contract* as a probation period. This language leaves no doubt that the time served under the Consultancy Agreement was not included in the probationary period. Since the language is unambiguous, parole evidence was inadmissible to alter its terms, and there was no question of fact to submit to the jury.

■ We cannot agree, however, with the trial court's holding that the contract's language governing termination during the probation period was unambiguous and clearly expressed the parties' intention that Musgrave could be terminated during the probation period without cause. Paragraph 8(a), which governs termination during the probation period, states:

The Employer shall have the right within the probation period set forth in paragraph 1 hereof to terminate Employee's service without prior notice, Saudi service award or completion of contract bonus.

This language states simply that Musgrave could be terminated during the probation period without notice. The provision, however, is silent on the question whether he also could be terminated without cause. Paragraph 8(b) of the contract lists the causes for which Musgrave could be terminated without notice after the end of the probation period. Paragraph 8(d) of the contract governs termination generally and it broadly states that Musgrave could be terminated for "valid reason under Saudi law" upon thirty days notice. Thus three paragraphs of the contract relate to termination. Two of them, paragraphs 8(b) and 8(d), contain both temporal and "for cause" limitations. In our view, it is impossible to discern from the terms of the contract alone whether the parties' silence regarding a "for cause" requirement in the third

paragraph 8(a), evinces their intention to include or exclude such a requirement for termination during the probation period.

Musgrave testified he had been informed by a recruiter that he could not be terminated without cause during the probation period, and he presented the testimony of two HCA hospital administrators that HCA's policy was that probationary employees would not be terminated without cause. Musgrave also presented testimony that, subsequent to his firing, a draft of an employee manual was revised to eliminate a term providing for termination without cause during probation on the ground that the term was inconsistent with company policy.

In light of the lack of clarity in paragraph 8(a) and the parole evidence presented, we cannot but conclude that "fairminded men might reasonably arrive at different conclusions" concerning the parties' intent regarding the conditions governing termination during the probation period. The trial court therefore was obligated to submit the issue to the jury. Accordingly, the judgment of the trial court is reversed, and the case is remanded for retrial in accordance with the views expressed in this opinion.

REVERSED AND REMANDED.