IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 


No. 
01-0774

 
J. M. Davidson, 
Inc.
 
v.
 
Chelsey J. Webster
 


On Petition for Review from 
the
Court of Appeals for the 
Thirteenth District of Texas

 
Argued on December 11, 2002


Justice Schneider, joined by Justice O=Neill, 
dissenting.

I 
respectfully dissent.  The 
controversy in this case involves a company=s 
arbitration policy that an employee agreed to sign after beginning his 
employment.  When the company sought 
to enforce the arbitration policy, the trial court denied the motion to compel 
arbitration.  A divided court of 
appeals affirmed the trial court=s 
order.  The Court says that the 
wording in the arbitration policy is ambiguous and that the case should be sent 
back to the trial court to hear evidence concerning the parties= 
intent.  But I would not be as hasty 
as the Court to send this matter back to the trial court because I cannot 
imagine what such a hearing would look like.  I would, in the first instance, hold 
that the policy provisions are not ambiguous.  Then, in the second instance, I would 
hold the employee is entitled to complete relief in this Court.  The arbitration promise made by the 
company is illusory, and because it is, I would affirm the court of appeals= 
judgment denying the motion to compel arbitration.
FACTS
Chelsey Webster (AWebster@) 
went to work for J.M. Davidson, Inc. (ADavidson@).  A few days after beginning employment, 
Webster signed the agreement that is at the heart of the controversy in this 
matter.  The document, prepared by 
Davidson, is titled AAlternative 
Dispute Resolution Policy@ 
(AADR Policy@).[1]  It is undisputed that Webster was 
employed by Davidson at the time he signed the agreement.
Approximately 
eleven months after commencing his employment, Webster was injured on the 
job.  Webster filed for workers= 
compensation benefits.  Then, about 
one month later, Davidson terminated Webster.  Webster filed suit, alleging Davidson 
fired him in retaliation for filing a workers= 
compensation claim.  Davidson sought 
to enforce the arbitration clause contained in the ADR 
Policy that Webster had signed.
            
A hearing on Davidson=s 
Motion to Compel Arbitration was held before the trial court.  During the hearing, Davidson introduced 
a copy of the arbitration policy signed by Webster.  Davidson never signed the 
agreement.  But, Webster has never 
complained about the absence of Davidson=s 
signature.
Davidson 
had the initial burden of proof to establish the arbitration agreement's 
existence and to show that the claims asserted against it fell within the 
arbitration agreement's scope.  
See Williams Indus. Inc. v. Earth Dev. 
Sys. Corp., 110 S.W.3d 131, 134 
(Tex. App.BHouston 
[1st Dist.] 2003, no pet.).  If 
Davidson had met its burden of proof, then the burden would have shifted to 
Webster to show why the arbitration agreement did not apply.  
Id.  At the Motion to Compel Arbitration 
hearing, the trial court properly considered the pleadings of the parties, the 
motion to compel arbitration, and responses.  See Jack B. Anglin Co. Inc. v. Tipps, 842 
S.W.2d 266, 269 (Tex. 1992) (Athe 
trial court may summarily decide whether to compel arbitration on the basis of 
affidavits, pleadings, discovery, and stipulations.@).  But, the trial court heard no live 
testimony about the ADR Policy.  Cf. id. (noting 
that Aif 
the material facts necessary to determine the issue are controverted, Athe 
trial court must conduct an evidentiary hearing to determine the disputed 
material facts@).
After 
considering the evidence, the trial court denied the motion to compel 
arbitration without stating a reason for the denial.  The record must be construed in a light 
favorable to supporting the judgment.  
See Keller v. Nevel, 699 S.W.2d 211, 212 
(Tex. 1985).  Davidson appealed, and the court of 
appeals affirmed the trial court.
ANALYSIS
In 
deciding the motion to compel arbitration, the trial court should have 
considered two issues: 1) was there a valid arbitration agreement; and 2) if so, 
did the agreement encompass the claim?  
See In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 
(Tex. 1999); 
Dallas Cardiology Assocs., P.A. v. Mallick, 978 
S.W.2d 209, 212 (Tex. App.BTexarkana 
1998, pet. denied); Dalton Contractors, Inc. v. Bryan Autumn Woods, Ltd., 
60 S.W.3d 351, 353 (Tex. App.BHouston 
[1st Dist.] 2001, no pet.).  The 
first of these issues is the subject of this appeal; thus, we must decide if the 
trial court was correct in concluding there was no valid arbitration 
agreement.
A.  Standard of Review
We 
review a trial court=s 
decision to deny a motion to compel arbitration under a legal sufficiency or 
Ano 
evidence@ 
standard of review when factual findings are in dispute.  See Certain Underwriters v. Celebrity 
Inc., 950 S.W.2d 375, 377 (Tex. App.BTyler 
1996, writ dism=d 
w.o.j.).  
However, in this case, the only issue before us is the trial court=s 
legal interpretation of the arbitration clause; no findings of fact were 
made.  Thus, de novo review 
is appropriate.  
Id.; see also 
Nationwide of Bryan, Inc. v. Dyer, 969 S.W.2d 518, 520 (Tex. App.BAustin 
1998, no pet.); Dalton Contractors, Inc., 60 S.W.3d at 353.
B.  Construction of the ADR Policy 
Under 
the guise of a de novo review of the trial court=s 
legal interpretation of the agreement, the Court may not create an agreement for 
the parties that is different from the one they 
entered.  But, the Court attempts to 
do just that.  The ADR Policy expressly reserves Davidson=s 
right to Aunilaterally 
abolish or modify any personnel policy without prior notice.@  The Court raises ambiguity as an issue 
sua sponte and 
concludes that this unilateral termination provision in the ADR Policy is ambiguous because Ait 
is not possible to determine from the document itself whether the unilateral 
termination right applies to the parties= 
agreement to arbitrate, or only to >personnel 
policies= 
concerning the at-will employment relationship.@ 
__ S.W.3d __.  But neither Webster, 
Davidson, the trial court, nor the Court of Appeals have suggested the language 
quoted above is ambiguous.  I would 
hold that this language regarding the unilateral termination right unambiguously 
applies to the entire agreement, including the agreement to arbitrate.  Although ultimately 
the contract fails for lack of consideration (see discussion below), it cannot 
be said that the ADR Policy is ambiguous.
1.         
The ADR Policy is not ambiguous.
There 
are several reasons why the document can be unambiguously read so that the 
universal termination right language applies to the entire document.  First, the document is entitled AAlternative 
Dispute Resolution Policy,@ 
which suggests that the unilateral termination right contained within it would 
apply to arbitration, as the title would be applicable to the entire 
document.  See e.g. Neece v. A.A.A. Realty Co., 
322 S.W.2d 597, 606 (Tex. 1959) (Calvert, J., dissenting) (recognizing that 
the title of an agreement can have the legal effect of importing words into the 
contract).
Secondly, 
the unilateral termination right applies to Aany 
personnel policy,@ 
and it is reasonable to conclude that an arbitration policy would fall under the 
category of a personnel policy.  
Arbitration agreements are often a part of employee manuals or personnel 
policies.  See e.g., In re Tenet 
Healthcare Ltd., 84 S.W.3d 760, 763 (Tex. App.BHouston 
[1st Dist.] 2002, orig. proceeding) (analyzing a legally binding arbitration 
agreement appearing in an employee handbook containing personnel policies).  Moreover, the ADR Policy was provided by an employer to be signed by an 
employee, suggesting it is a personnel policy.  It is not only reasonable to believe the 
arbitration provision is a personnel policy of the company, it is unreasonable to reach any other 
conclusion.  The Court seems to 
suggest that the Apersonnel 
policy@ 
must be one or the otherBeither 
a policy, or an agreement.  Surely a 
reasonable interpretation is that it could be both.
Webster 
even promises to abide by all of Davidson=s 
Apolicies@ 
in the ADR Policy, and it is reasonable to conclude 
that Davidson wanted to retain the right to unilaterally terminate all parts of 
the ADR Policy because the policy did not specifically 
exempt the arbitration agreement from the unilateral termination right.
Finally, 
neither Davidson nor Webster have ever argued that the 
unilateral termination right did not apply to the arbitration agreement.  The actions of both the parties 
throughout their litigation reflect the belief that the arbitration policy is a 
personnel policy.  They both came to 
the Motion to Compel Arbitration hearing arguing about several issues, none of 
which ever raised the question of whether the arbitration policy was a personnel 
policy.  All of their actions 
throughout the litigation are consistent with the notion that the right to 
unilaterally terminate applied to the arbitration policy.
Webster 
and Davidson do offer different interpretations of the unilateral termination 
clause.  But their differences have 
nothing to do with factual issues; rather, they differ in the legal significance 
of the arbitration policy.  
Nevertheless, the fact that their explanations differ does not render the 
contract ambiguous.  See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 
(Tex. 1996) (noting that an 
ambiguity does not arise simply because parties offer conflicting 
interpretations of the contract).  
For an ambiguity to exist, both explanations must be reasonable. 
Id.  Conversely, a contract is ambiguous if 
its language is subject to two or more reasonable interpretations.  See Monsanto v. Boustany, 73 S.W.3d 225, 229 
(Tex. 2002).  Here, there is only one reasonable 
interpretation of the ADR Policy, and the Court=s 
insistence that it is ambiguous flies in the face of well-established rules of 
construction.


2.         
Finding the ADR Policy ambiguous is contrary to 
well-established rules of construction.

One 
of the basic tenets of contract interpretation is the assumption that the 
parties intend every part of an agreement to mean something.  When construing a written contract, we 
are to ascertain the intent of the parties as expressed in the instrument.  Nat=l 
Union Fire Ins. Co. of Pittsburgh, 
PA. v. CBI Indus. Inc., 
907 S.W.2d 517, 520 (Tex. 
1995); 718 Assocs., Ltd. v. Sunwest N.O.P., Inc., 1 S.W.3d 355, 360 (Tex. App.BWaco 
1999, pet. denied) (courts will enforce an Aunambiguous 
instrument as written, and ordinarily, the writing alone will be deemed to 
express the parties intentions@).  Contracts are to be read as a whole, and an interpretation that gives effect to every part 
of the agreement is favored so that no provision is rendered meaningless or as 
surplusage.  
See Westwind Exploration 
Inc. v. Homestate Savings Ass=n., 
696 S.W.2d 378, 382 (Tex. 
1985).
The 
Court ignores these well-settled principles of contract interpretation when it 
concludes the agreement is ambiguous.  
Davidson=s 
right to unilaterally abolish or modify any personnel policy without 
prior notice must be given its plain and ordinary meaning.  Thus, the unilateral termination 
language must mean that Davidson can cancel or alter any personnel policy 
without informing Webster.  Although 
I ultimately conclude that the ADR Policy is not 
binding because it is illusory, the agreement is not ambiguous.
C.  The ADR Policy 
is unenforceable because it is illusory.
In 
my view, the unilateral termination right in the ADR 
Policy makes Davidson=s 
performance optional as to the entire policy, and thus, renders the ADR Policy illusory.  
Thus, I would find that the agreement between Davidson and Webster fails 
to rise to the level of a contract as it lacks consideration.


1.         
The ADR Policy does not contain 
consideration.

Consideration 
is an essential element for a valid, enforceable  contract.  Federal Sign v. 
Texas S. 
Univ., 951 S.W.2d 401, 408-09 (Tex. 
1997).  If mutual, reciprocal 
promises are binding on both parties, they may constitute consideration for a 
contract.  Texas Gas Util. Co. v. Barrett, 460 S.W.2d 409, 412 
(Tex. 1970); 
Johnson v. Breckenridge-Stephens Title Co., 257 S.W. 223, 225 (Tex. Com. 
App. 1924).
But, 
if the terms of a promise make performance optional, the promise is illusory and 
cannot constitute valid consideration. Light v. Centel Cellular Co. of 
Texas, 883 
S.W.2d 642, 645 (Tex. 1994) (AWhen 
illusory promises are all that support a purported bilateral contract, there is 
no contract.@); 
Restatement (Second) of Contracts 
'' 
2 cmt. e; 77 cmt. a.  Valid consideration exists if a 
party reserves the right to terminate an agreement with notice.  See Restatement (Second) of Contracts ' 
77 cmt. b, illus. 5. But, a 
termination clause that allows a party to terminate the contract at will makes performance optional, and thus, makes any promise 
illusory.  See Light, 883 
S.W.2d at 645; see also, Tenet Healthcare Ltd. v. Cooper, 960 S.W.2d 386, 
388-89 (Tex. App.BHouston 
[14th Dist.] 1998, pet. dism=d 
w.o.j.).
Here, 
the ADR Policy reserves Davidson=s 
right to Aunilaterally 
abolish or modify any personnel policy without prior notice.@  Under the plain language of the 
contract, Davidson reserved the right to abolish or modify any personnel 
policy.  As explained above, the 
unilateral termination right would also apply to the agreement to arbitrate all 
claims.  By retaining the right to 
terminate the ADR Policy at any time, Davidson can 
avoid arbitration.  Thus, Davidson 
is not bound to its promise to arbitrate, and its promise to avoid litigation 
does not amount to consideration.  
See In re Halliburton, 80 S.W.3d 566, 570 
(Tex. 2002) (reciprocal promises 
are not sufficient if one party can avoid its promise). Because there is no 
consideration for the ADR Policy, the agreement is 
illusory and unenforceable.


2.         
Davidson=s 
attempts to create consideration fail.

In 
an attempt to create consideration where none exists, Davidson claims that the 
language regarding the unilateral termination right complied with contractual 
mutuality requirements because, AIf...Davidson 
changed the ADR policy, or abolished it altogether, 
the changes would have applied to both parties.@  However, because Davidson alone had the 
unilateral right to terminate or change the agreement, the agreement is 
illusory.  It is irrelevant that any 
changes made by Davidson would apply to both parties.
Davidson 
also argues that the promise to arbitrate is not illusory because, under 
Halliburton, 80 S.W.3d at 570, it is bound to resolve any dispute 
according to the ADR plan in effect at the time the 
dispute arises.  However, the 
express contract terms we relied on to find the Halliburton agreement 
enforceable are missing here.  The 
plain language of the Halliburton ADR plan required 
the employer to provide notice before enacting any modifications or terminating 
the plan.  Davidson suggests that 
because the agreement we upheld in Halliburton required notice and 
prospective application, the same protective language can be implied here.  I disagree.
In 
Halliburton, we relied on the ADR policy=s 
notice provisions to conclude that Halliburton could not Aavoid 
its promise to arbitrate by amending the [policy] or terminating it 
altogether.@  Halliburton, 80 
S.W.3d at 570.  Here, we 
cannot imply the obligations that precluded Halliburton from avoiding its 
promise to arbitrate.  The 
agreement=s 
plain language establishes Davidson=s 
unhindered right to modify or terminate the agreement without notice.  It is not proper to imply terms that 
contradict the express contract language.  
See Haws & Garret Gen. Contractors, Inc. v. Gorbett Bros. Welding Co., 480 S.W.2d 607, 
609-610(Tex. 1972) (the terms of 
an implied contract are inferred from the circumstances).
Davidson 
further attempts to explain the unilateral termination language as simply 
acknowledging an employer=s 
right to make changes to at-will employment terms, as in Hathaway v. Gen. 
Mills, Inc., 711 S.W.2d 227, 229 (Tex. 1986).  But, the arbitration agreement=s 
language contradicts Davidson=s 
explanation.
In 
Hathaway, we held that an employer may enforce changes to an at-will 
employment contract if the employer unequivocally provides notice of a definite 
change and the employee accepts the change by continuing employment.  Hathaway, 711 
S.W.2d at 229.  Here, the 
contract expressly allows Davidson to effect a change in the ADR plan=s 
terms without notice.  Thus, it is 
inconsistent to explain the reservation language as merely restating our holding 
in Hathaway, because the arbitration agreement=s 
terms contradict the Hathaway requirements.
Additionally, 
whether an employer has satisfied the Hathaway requirements is a separate 
inquiry from the determination of whether the arbitration agreement is 
enforceable under traditional contract principles.  If an employer seeks to change the terms 
of an employment relationship by implementing an agreement to arbitrate all 
disputes, the employer must show the arbitration agreement, standing alone, 
satisfies all requisite elements of a valid contract.  See Light, 883 S.W.2d at 645-46; 
Halliburton, 80 S.W.3d at 569.  
This showing is separate from the employer=s 
duty to meet the Hathaway requirements of notice and acceptance. 
Id.
Davidson=s 
attempts to create consideration via an alternate reading of the language 
of the agreement are not reasonable.  
When the meaning of an agreement is plain and unambiguous, a party=s 
construction is immaterial.  718 
Associates, Ltd., 1 S.W.3d at 360.  
I would find the contract unenforceable because it fails for lack of 
consideration and is illusory.
3.         
The Court incorrectly concludes that the unilateral termination right 
is ambiguous.
            
The Court sends this case back for the trial court to consider parol evidence, finding that a fact issue exists concerning 
the applicability of the language in question to the arbitration agreement.  But, as discussed above, the language 
unambiguously gives Davidson the right to unilaterally terminate any part of the 
agreement.  Thus, there is no fact 
issue to be determined by the trial court and there is no need for parole 
evidence to be taken.


4.         
The unilateral termination right does not only apply 
prospectively.

Although 
I agree with Justice Smith that the contract is unambiguous and the arbitration 
agreement is a personnel policy subject to Davidson=s 
unilateral termination right, I cannot agree that the right to abolish or modify 
personnel policies only applies prospectively with contemporaneous notice.  The ADR Policy 
allows Davidson to unilaterally abolish or modify any personnel policy Awithout 
prior notice.@  Justice Smith looks to 
England to 
determine how to interpret the phrase Awithout 
prior notice.@
However, 
applicable precedent can be found closer to home.  For example, in Shumway v. Horizon Credit Corp., 801 S.W.2d 
890 (Tex. 1991), we held that the 
language Awithout 
prior notice@ 
waived the right to all notice.  
801 S.W.2d at 893-94.  Similarly, in Musgrave v. HCA Mideast, 
Ltd., 856 F.2d 690 (4th Cir. 1988), the court interpreted a contract 
providing that the employer had the right to terminate an employee=s 
service Awithout 
prior notice.@  The Fourth Circuit concluded that this 
language Astates 
simply that [the employee] could be terminated during the probation period 
without notice.@  856 F.2d at 
694.  Justice Smith=s 
interpretation that Awithout 
prior notice@ 
means Awith 
contemporaneous notice@ 
is not supportedBand 
indeed, is contradictedBby 
caselaw from American jurisdictions.
Justice 
Smith is essentially inserting a qualifying phrase into Davidson=s 
unilateral, unqualified right to terminate.  Even though the ADR Policy permits Davidson to Aunilaterally 
abolish or modify any personnel policy without prior notice,@ 
Justice Smith interprets this as requiring contemporaneous notice.  The agreement contains no such 
limitation.
Justice 
Smith also attempts to distinguish our holding in Hathaway by noting that 
in that case, while we required an employer making a change to an at-will 
employment policy to provide notice, we did not specify that the notice had to 
be given before the change was made.  
Justice Smith contends that under our decision in Hathaway, notice 
could be Aeither 
in advance of or contemporaneous with the policy change.@ 
__ S.W.3d __.  
However, Justice Smith misunderstands our holding in Hathaway.  In Hathaway, we explained the 
employee must have knowledge of the employer=s 
proposed modification to an at-will employment policy to constitute effective 
notice; that is, the employee must Aknow 
the nature of the changes and the certainty of their imposition.@  Hathaway, 711 
S.W.2d at 229.  Requiring the 
employer to prove unequivocal notification of changes to the employment terms 
was based, in part, on fairness to the employee.  See id.   The requirement that an employee 
be aware that changes to the employment policy are certain to be imposed implies 
that there must be prior notice.  It 
is unreasonable to conclude contemporaneous notice of a policy change is 
permissible under Hathaway. Indeed, permitting an employer to give 
contemporaneous notice of changed employment terms undermines 
Hathaway=s 
concerns for fairness to an employee and stretches our holding in 
Hathaway too far.
Moreover, 
Justice Smith confuses the Hathaway requirements for changes to an 
at-will employment agreement with the requirements for a valid, enforceable 
arbitration agreement. They are two separate inquiries.  Even assuming Justice Smith is correct 
that Davidson may give contemporaneous notice of a change to the terms of 
Webster=s 
employment terms under Hathaway, the arbitration clause of the ADR Policy remains illusory and unenforceable.  If contemporaneous notice to cancel the 
arbitration agreement is permissible, Davidson retains the right to discontinue 
performance at any time.  Under this 
scenario, there is no consideration, as Davidson is not giving up a benefit or 
suffering a detriment.  See e.g., 
In re C&H News Co., No. 13-02-529-CV, 
2003 WL 131770 at *4 (Tex. App.BCorpus 
Christi 2003, orig. proceeding).  
Thus, the arbitration clause would still be illusory and 
unenforceable.
D.  Enforceable arbitration agreements must 
bind both the employer and the employee.
There 
is no mystery to drafting an enforceable arbitration agreement.  Capable counsel 
know that limitations on an employer=s 
right to terminate the agreement are necessary so the agreement is not 
illusory.  See, e.g., In re Tenet 
Healthcare, Ltd., 84 S.W.3d at 766-67 (arbitration provision was enforceable 
because the right to terminate the agreement specifically excepted the 
arbitration agreement); In re Kellogg Brown & Root, 80 S.W.3d 611, 
616 (Tex. App.BHouston 
[1st Dist.] 2002, orig. proceeding) (arbitration agreement enforceable because 
it provided that it could be amended or terminated by the company by giving at 
least 10 days notice to employees and that such amendment would not apply to a 
dispute that had been initiated); In re Jebbia, 
26 S.W.3d 753, 758 (Tex. App.BHouston 
[14th Dist.] 2000, orig. proceeding).
In 
this agreement, however, there was no limitation to Davidson=s 
right to terminate, amend, or cancel the agreement.  The  only consideration for the 
agreement was continued at-will employment, which amounts to no 
consideration.  Light, 883 S.W.3d at 644.  
Thus, the arbitration agreement is illusory and unenforceable.
CONCLUSION
I 
disagree with the Court=s 
determination that the arbitration agreement is ambiguous.  I also believe the agreement is 
illusory.  In Halliburton, we 
said that an arbitration agreement=s 
terms must bind both the employer and employee if the agreement relies on mutual 
promises to arbitrate for consideration.  
Davidson=s 
ADR Policy lacks the protections we relied on in 
Halliburton to find the promises to arbitrate mutually binding.  The unilateral right to modify or 
terminate the agreement without notice allows Davidson to avoid its promise at 
any time.  Accordingly, I would hold 
that the arbitration agreement between Davidson and Webster fails to bind 
Davidson, and thus, the promise is illusory and the agreement is unenforceable 
for want of consideration.  I would 
affirm the court of appeals= 
judgment.
 


__________________________________
MICHAEL 
H. SCHNEIDER
JUSTICE

 
 
OPINION 
DELIVERED:   December 31, 2003




[1]               
The ADR Policy Webster signed contained only 
two paragraphs.  The first paragraph 
had two sentences covering thirteen lines, and the second paragraph had thirteen 
sentences and nineteen lines, for a total of fifteen sentences spanning 
twenty-seven lines of text.  
Arbitration is only discussed in two of the fifteen sentences.  The body of the document occupied 
approximately half of a letter size page.   The ADR 
Policy has the company name, J.M. Davidson, Inc., at 
the top of the page in an all capitals, bold face font similar to a company 
letterhead.  The title of the 
agreement, also in all capital, bold letters, is AALTERNATIVE DISPUTE RESOLUTION POLICY.@  The 
sub-title of the document is AEMPLOYMENT APPLICATION LANGUAGE,@ styled in all capitals under the title.